THE STATE, ELISHA RUCKMAN, PLAINTIFF IN ERROR, v. PETER A. DEMAREST, COLLECTOR OF HARRINGTON, IN THE COUNTY OF BERGEN.

1. A tax levied and assessed against persons above the age of forty-five years, and, therefore, not liable to be drafted, to procure and pay volunteers to serve, and thus exempt from service those who are liable by law, is constitutional.
2. An assessment for such purpose is not taking private property for private use, but for public use.
3. Whether the interest of the people of the state would be best promoted by suffering a draft, or levying a tax and paying bounties to volunteers and substitutes, is a question of which the legislature is the sole judge, and which they have full power and authority under the constitutution to decide.
4. When county authorities have ordered moneys raised and appropriated to the payment of volunteers, such action, if irregular and without authority, may be made valid and effectual by legislative act.
5. To assign errors in matters not on the record, but in the written opinion of the court, alleging various imperfections and defects in the reasoning by which the court reached its conclusion, is wholly unwarranted, and the court upon its own motion will order such assignment stricken out.

Error to Supreme Court.

In the year 1864, Elisha Ruckman, the prosecutor, was assessed upon his real and personal property, in the township of Harrington, and county of Bergen, to the amount of six hundred and thirty-nine dollars and ten cents. In 1865 the assessment was removed into the Supreme Court by *certiorari*, and sought to be set aside for the following reasons:

1. Because the commissioners of appeal refused to entertain or consider the objections made by the prosecutor against the assessment.

2. Because the said assessment was unequal, unjust, and oppressive.

3. Because the said assessment was arbitrarily made, and without warrant of law.

4. Because the said assessment is unconstitutional.

The case came on to be heard in *banc*, in the Term of June, 1865, and at the November Term ensuing, the court affirmed the assessment in all things. The opinion of the court was pronounced by Mr. Justice Vredenburgh, and not having been before reported, is inserted here, as showing the reasons on which the court below founded their judgment, and forming a necessary part of the case.

VREDENBURGH, J.    This *certiorari* was brought to set aside the assessment of taxes for state, county, and township purposes, and for school and road taxes, for the township of Harrington, for the year 1864, made on the goods and lands of the prosecutor.

That part of the tax assessed to pay bounties for volunteers is the only part complained of. This, as assessed upon the real and personal property of the prosecutor, amounts to the sum of about four hundred and fifteen dollars.

The first reason assigned for reversal is, that the commissioners of appeal refused to entertain or consider the objections made by the prosecutor against the assessment.

This reason does not appear to be sustained by the proof.

The eighth section of the act concerning taxes, (*Nix. Dig.* 843,)* gives the right to any one thinking himself aggrieved by any assessment to appeal to the commissioners of appeal; and the forty-ninth section of the same act (*Nix. Dig.* 849,)† provides that the commissioners, after due examination of the facts and consideration of the case, shall give such judgment as shall be agreeable to principles of justice.

This reason, as assigned, is not that the commissioners did not decide rightly, but that they refused to entertain or consider the objections made by the prosecutor.

The evidence of the prosecutor upon this point is, " I objected to this tax before the commissioners of appeal, that the government called for men, and that neither state nor county could refuse to give men, and levy a tax to buy them

---

* *Rev., p.* 1142, § 8.    † *Rev., p.* 1148, § 48.

elsewhere, and they decided against me in about two or three minutes, without time for any consideration; I do not mean to be understood as saying they did not deliberate upon it; I mean to say simply, that they came promptly to their decision." When a judicial tribunal comes promptly to a decision, it does precisely the opposite thing from refusing to entertain or consider the objections made. Instead of refusing to do so, it does so immediately.

The second reason assigned for reversal is, that the assessment is unequal, unjust, and oppressive. But, in the first place, it is not shown, by any evidence, in what way the assessment is unequal, unjust, and oppressive. But even if it was, so is, more or less, every assessment. Besides, these matters are the proper objects of review before the commissioners of appeal; and it appears, by the case, that the prosecutor did appeal to them, and that they decided against him, and their decision, by the very terms of the act, is final and conclusive.

The third reason assigned for reversal is, that the assessment was arbitrarily made without warrant of law.

The assessment was made under a resolution of the board of freeholders of the county of Bergen, at their May meeting in 1864, ordering one hundred and twenty-five thousand dollars bounty money raised for county purposes.

About twenty-five thousand dollars of this assessment was to pay the interest on the outstanding indebtedness of the county for bounty purposes, and the balance was to pay so much of the principal.

The county of Bergen was legally compelled to furnish soldiers to the United States to suppress the late southern rebellion, by a draft, if necessary, for that purpose.

The draft could be legally avoided by the required number of men volunteering from that county. The board of chosen freeholders, to avoid the necessity of the draft, offered and paid money to volunteers until they obtained the requisite number. The money thus paid was obtained by borrowing, and it was to pay the interest and part of the principal of

such indebtedness, that that order of the board of freeholders, and this assessment under it, were made.

This gives rise to two questions—first, was the board of freeholders authorized by law to make this order; second, if it were, was the assessment in pursuance of it?

*First.* Was the board authorized by law to make this order? The authority is claimed for the board under the act of our legislature, entitled an act to authorize the board of chosen freeholders of the county of Bergen to raise money, issue bonds, and for other purposes, passed March 19th, 1864. *Pamph. Laws* 1864, *p.* 207.

This law, by its terms, does give power to the board of freeholders to order the raising of this one hundred and twenty-five thousand dollars by taxation.

The only question which can be raised in regard to it is, was it constitutional?

Does it, in the first place, infringe any provision in the constitution of the United States, or any act of congress passed in pursuance thereof? We have not been pointed to any such infringement. The constitution gives power to congress to raise and support armies, and to provide for calling forth the militia to execute the laws of the Union, and suppress insurrections. Under these constitutional provisions, congress had passed laws to call out certain proportions of the militia of Bergen county. Under these calls, Bergen county had, and was still furnishing the men called for. The general government preferred having them by volunteering, but in case they could not so get them, they must have them by draft. Bergen county preferred to send them as volunteers. The state statute in question was passed, to enable the county authorities to raise bounties by taxation to procure such volunteers, and the particular tax now in question was imposed to pay such bounties. The testimony shows it was not imposed to exempt men from going to the war, but, on the contrary, to induce them to go. In all this, so far from seeing anything antagonistic to the laws and con-

stitution of the United States, I see nothing but what is in sympathy and aid of them all.

Nor do I see anything in the state law, and this tax under it, antagonistic to the state constitution. Without express-ing any opinion as to whether that clause of the state law providing for the payment of commutation might infringe upon the law of congress, there is, evidently, no collision be-tween it, and either the state constitution or the law of con-gress, so far as paying bounties for volunteers is concerned. The state legislature has general powers of legislation, and those who set up that any particular law is unconstitutional must show it clearly. Here the legislature have given power to this municipality to tax to pay bounties for volunteers legally called for by the general government. This is clearly within their powers of ordinary legislation, and all arguments as to this tax being unjust, unequal, arbitrary, and oppressive, are properly addressed to the discretion of the legislature, and upon which its action is final.

These considerations are all beyond the scope of judicial inquiry.

The assessment must be affirmed.

This judgment of the Supreme Court was then removed into this court by writ of error, and the following errors were assigned for its reversal:

Afterwards, to wit, at the term aforesaid, before the court aforesaid, at Trenton, comes the plaintiff in error, by Abra-ham S. Jackson, his attorney, and says—that in the record and proceedings aforesaid, and also in giving the judgment aforesaid, there is manifest error in this, to wit:

1. That the said Supreme Court determined that the judg-ment of the commissioners of appeal in cases of taxation, made in this behalf against the plaintiff in error, was final and conclusive; whereas, by law, the same, when based on erroneous principles, is not final and conclusive.

2. And there is also error in this, to wit, that the said

Supreme Court adjudged that the said assessment for taxes upon the goods and lands of the plaintiff in error, for the payment of bounties, was not unequal, unjust, or oppressive; whereas the same, having been made upon erroneous principles, is unequal, unjust, and oppressive.

3. And there is also error in this, to wit, that the said Supreme Court held that said assessment was not arbitrarily made, and without the warrant of law; whereas the same was so made.

4. And there is also error in this, to wit, that the said Supreme Court decided that the *whole* of said assessment could be made under the act entitled "An act to authorize the board of chosen freeholders of the county of Bergen to raise money, issue bonds, and for other purposes," approved March 10th, 1864, (*Pamph.* 207); whereas, by an act of like title, approved February 11th, 1863, (*Pamph.* 33,) the assessment of taxes for the payment of bounties, in an amount of one hundred and fifty thousand dollars, must be made, if at all, according to the provisions of the latter act.

5. And there is also error in this, to wit, that the said Supreme Court maintained that it was the province of the legislative department of the state government to decide as to *what kind* of taxes should be levied on the goods and lands of the plaintiff in error, and that such decision could not be impeached; whereas, by law, it is the duty of the judicial department of the state to protect the plaintiff in error against unconstitutional laws.

6. And there is also error in this, to wit, that the said Supreme Court adjudged that it was within the scope of the powers vested in the legislature of this state to ratify and make valid the acts of said board of chosen freeholders, who had unlawfully incurred debts for the payment of bounties; whereas, by law, said debts, having been by said board incurred for an unlawful purpose, could not be made valid and binding on said board, nor on the several inhabitants of the county of Bergen.

7. And there is also error in this, to wit, "That the said

Supreme Court maintained that the said assessment of taxes, directed to be made by said board of chosen freeholders, was made for a lawful purpose, to wit, for the paying of money, which had been expended in bounties to volunteers, or to drafted men of the county of Bergen, or to men therein liable to draft; whereas, by the law of the land, it is not lawful to raise money by a general tax, which is not intended or employed for a general use, but for private benefit."

8. And there is also error in this, to wit, that the said Supreme Court adjudicated that the county of Bergen was legally compelled to furnish soldiers to the United States to suppress the late southern rebellion; whereas, the said county could not be compelled, by any law of this state or of the United States, to furnish soldiers for the United States army, but only private persons, citizens of the United States, residing in said county, were liable to be enrolled, drafted, and mustered into the service of the United States.

9. And there is also error in this, to wit, that the said Supreme Court held that the congress of the United States had passed laws to call out certain proportions of the militia of Bergen county into the military service of the United States; whereas, no such laws have ever been passed by said congress.

10. And there is also error in this, to wit, that the said Supreme Court decided that the power for making said assessment of taxes, given to the said board of chosen freeholders, by said two acts of the legislature of this state, did not infringe any provision of the constitution of the United States; whereas, said power is expressly denied the said legislature by the constitution of the United States.

11. And there is also error in this, to wit, that the said Supreme Court adjudged that the said power so granted did not infringe any provision of any act of congress; whereas, the exercise of said power is to relieve, and did relieve, certain private persons, residents of the county of Bergen, and citizens of the United States, from a particular duty imposed

State, Ruckman, v. Demarest, Collector of Harrington.

on them by law, and by an act of congress, entitled "an act for enrolling and calling out of the national forces, and for other purposes," approved March 3d, 1863, and the supplements and auxiliary acts thereto, the object and purpose of said acts of congress being to enroll, draft, and muster said private persons into the military service of the United States.

12. And there is also error in this, to wit, that the said Supreme Court determined that the legislature of this state had a right to grant power to the board of chosen freeholders of the county of Bergen to levy a tax upon the residents of the county at large to pay bounties to such persons as should volunteer in the military service of the United States, in the stead of certain private persons, residents in said county, citizens of the United States, who owed military service to the United States (which could be discharged only in their private capacity), or to such persons as should go as substitutes for them; whereas, it is not lawful for the legislature to relieve a private citizen from the performance of a duty enjoined by law, and cast the burthen of the same upon the community at large.

13. And there is also error in this, to wit, that the said Supreme Court affirmed the said assessment to be valid and effectual in law; whereas, the same is invalid and of no effect and should be set aside.

And the said plaintiff in error prays that the judgment of the Supreme Court, for the errors aforesaid, and for other errors in said record and proceedings being, may be reversed, annulled, and altogether holden for nought; and that he may be restored to all things that he has lost by reason of said judgment, &c.

The case was argued by—

*A. S. Jackson,* for the plaintiff in error.

*I. W. Scudder,* for defendant.

The opinion of the court was pronounced by

DALRIMPLE, J.    The writ of error in this case removes the judgment of the Supreme Court on *certiorari* in a tax case. Elisha Ruckman, the prosecutor in the court below, brought a *certiorari* to remove an assessment of taxes, made against him in the township of Harrington, in the county of Bergen, in the year 1864.

It appears that the county of Bergen responded to the call made upon it for troops, to prosecute the late civil war, prior to 1864, by furnishing volunteers and substitutes, and thus avoiding the necessity of a draft.    Bounties were paid for such volunteers and substitutes by the board of freeholders, on request of the inhabitants of the several townships of the county, or some of them.    By an act of the legislature, approved February 11th, 1863, (*Pamph. Laws of* 1863, *p.* 33,) the indebtedness which had thus been informally and without authority of law, created for the purpose of paying bounties up to that time, was ratified and confirmed as against the county, and it was authorized to provide for the payment of the same by issuing its bonds, and to provide for the payment of the bonds and interest by taxes, to be assessed and collected at the time other taxes in the county were levied and assessed.

The third section of the act provides, that the said taxes shall be apportioned among the several townships in the said county, as follows : "So much thereof as may be required to pay the principal of the bonds and indebtedness and interest thereon, issued and incurred to pay the bounties of volunteers, to fill the regular quota of said county under said call, in the ratio of the number of volunteers each township was required to furnish, and so much thereof as may be required to pay the principal of the bonds and indebtedness and interest thereof, issued and incurred to pay the bounties of volunteers in excess of said quota, shall be apportioned on the same basis as other county taxes are."    By another act, approved March 10th, 1864, (*Pamph. Laws of* 1864, *p.* 207,) the chosen freeholders of Bergen were authorized to provide

for the payment of the indebtedness incurred, or to be incurred, by said board in raising money and paying bounties to and for such volunteers and soldiers as had been, or should be, enlisted and mustered in the service of the United States, in and for the said county, by issuing bonds in the corporate name, and under the corporate seal of said county, and to pledge the property and credit of the county for the payment of the same, and were required to provide for the payment of the same and interest by taxation, to be made, levied, assessed, and collected at the times and in the manner that other county taxes in said county were levied, assessed, and collected. An assessment of taxes was made in the year 1864, to pay the interest and a portion of the principal of the bonds issued and indebtedness which had been so created, and for which the county had thus become liable.

The prosecutor was a taxable inhabitant of the township of Harrington, and, as such, was assessed for his proportion of these taxes. He was above the age of forty-five years when the war commenced, and was not, therefore, liable to be drafted on any of the calls, to fill which the county furnished volunteers and substitutes. The Supreme Court having affirmed the tax, the prosecutor sues out of this court his writ of error, and instead of assigning errors upon the record, he makes twelve assignments of error upon the opinion of the court, and thereby alleges twelve different imperfections or defects in the reasoning whereby the court below reached its conclusion. This mode of assigning errors is wholly unwarranted, and the court, of its own motion, orders all the assignments of error, except the thirteenth (which may be said to be upon the record,) stricken out.

There were two reasons relied upon on the argument in this court for a reversal. The first was, because the tax was assessed on the same basis as other county taxes were, and was not apportioned as required by the third section of the act of 1863, "in the ratio of the number of volunteers each township was required to furnish." But the act of 1864 adopts another mode of assessment. It says, in so many

words, "that it shall be lawful for the freeholders of the
county of Bergen to provide for the payment of the indebted-
ness incurred, or to be incurred, by said board in raising
money and paying bounties, by issuing bonds in the corporate
name, and under the corporate seal of the county, and to pro-
vide for the payment of the same and the interest, by taxation
to be made, levied, assessed, and collected at the time and in
the manner that other county taxes in said county are levied,
assessed, and collected." It has not been shown that any of
the taxes of 1864 were to be applied to the payment of the
bonds issued by virtue of the act of 1863. If they were not
to be, then the assessment was rightly made under the act of
1864. It is not necessary for us to inquire as to the precise
effect, or proper construction of the act of 1864, until the
prosecutor shows that the moneys raised by the assessment
of which he·complains, or some of them, were to be applied
to the payment of the indebtedness provided for by the act of
1863. Besides, by the third section of the latter act, it will
be seen that the taxes, necessary to be raised to pay the
indebtedness incurred to pay the bounties of volunteers in
excess of the quota, should have been apportioned on the same
basis as other county taxes were.

It does not appear whether the taxes of 1864 were raised
to pay the bounties of volunteers, called to fill the regular
quota, or of those raised in excess of that quota. If the
taxes were to be applied to the payment of bounties to
the latter class of volunteers, they were properly assessed on
the same basis as other county taxes. The prosecutor alleges
the error. It is for him to prove it. A still more conclusive
answer to this objection is, that it sufficiently appears to the
court that the prosecutor's tax, if the mode of assessment he
contends for as the correct one had been adopted, would have
been greater in amount than it now is. He is better off
with the assessment made on the basis it was, than if the one
he contends for had been adopted. Such seems to be the
case from the facts and figures before us. Assuming that
the tax complained of was to pay the indebtedness provided

for by the act of 1863, and that strictly it should have been assessed in the manner pointed out by the first clause of the third section of that act, the prosecutor has not shown, nor attempted to show, that he has been injured by the assessment as made. If he has not sustained some substantial injury, he cannot ask to have the assessment set aside.

The other objection is, that both the acts of 1863 and 1864 are unconstitutional and void. No express provision of the constitution of this state, nor of the United States, contravened by either of these acts, has been pointed out. The argument is, that the taxes authorized by them are not taxes for any of the great purposes of government, but a taking of private property for private use. In other words, the prosecutor, not being liable himself to draft, it was unconstitutional to tax him to exempt his neighbors who were. Was the tax in question levied for private or public use? That seems to be the proper test. The rebellion was raging. The government called for troops. The quotas of the different townships, precincts, and wards in the state were assigned by the war department of the general government. If not filled by volunteers within a fixed time, a draft was to be made. Male citizens, between the ages of twenty-one and forty-five, were alone liable to draft. The taxes authorized by the laws in question, were to be assessed to fill up the ranks of the army of the United States. All alike, whether liable to military duty or not, were interested in the maintenance of the government, to support which the armies were raised. The State of New Jersey, as an organized political community, was interested in supporting the government and strengthening its armies, and when she, in her sovereign capacity, authorized a tax to be assessed to pay men voluntarily to enter those armies, such tax was for a public and not a private purpose. Besides, such tax was for a public purpose, for the very reason that the intent and effect of raising money thereby, was to save a general conscription of those liable to military duty.

Whether the interest of the people of the state, taking all

circumstances into consideration, would be best promoted by suffering a draft, or by levying a tax and paying bounties, and filling the army by volunteers and substitutes, was a question of which the legislature was the sole judge. From their decision, as to the equity, policy, and wisdom of authorizing such a tax, there is no appeal. It is sufficient for the court to say that the taxes, authorized by the statutes now under consideration, were to raise money to be expended for the protection of the person, property, and rights of the prosecutor, and of every other citizen of the state. This was for a public purpose. The legislature had full power and authority under the constitution to decide, that the public good required that a general conscription should be avoided by the raising of moneys to pay bounties to volunteers. A draft, enforced by the officers of the general government, might have been detrimental to all classes, and to the best interests of society. A tax upon all, to save a class from a draft, was no more a tax for a private purpose than a tax levied to promote common school education. School taxes are levied upon all for the benefit, in one sense, of a class. But all the citizens are interested in having an intelligent rather than an ignorant population.

Nor is it perceived that the tax is any the less legal because prior to the passage of the act authorizing it, the funds, or a portion of them, had been expended without any express authority of law warranting such expenditure. The county was not originally liable for it, as was well understood by all parties interested. The legislature afterwards saw fit to ratify and confirm the action of the county authorities; made the county, in its corporate capacity, liable for the moneys which had been expended, and provided by tax for their re-payment. This ratification by the legislature was, to all intents and purposes, as valid and effectual as if authority had been originally given to raise and expend the moneys.

The question before us is one of constitutional power on

State, Buckman, v. Demarest, Collector of Harrington.

the part of the legislature to authorize the tax for the purpose and in the manner it did.

We are clearly of opinion that it had such power; that the tax complained of is legal, and that the judgment of the Supreme Court must be affirmed.

*For affirmance*—ELMER, BEDLE, DALRIMPLE, WOODHULL, CORNELISON, WALES, KENNEDY.   7.

*For reversal*—None.

Judgment affirmed.

CITED in *Morrow* v. *Inhabitants of Vernon*, 6 *Vroom* 492; *Cleveland* v. *Board of Finance and Taxation of Jersey City*, 9 *Vroom* 265.