STATE OF CONNECTICUT *v.* HOME NATIONAL BANK AND
TRUST COMPANY OF MERIDEN, CONSERVATOR
(ESTATE OF JOHN B. FITZGERALD)

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. SPT 6-33

Argued July 18—decided December 9, 1966

*Harold M. Mulvey,* attorney general, and *Richard
E. Rapuano,* assistant attorney general, for the
appellant (state).

*Dennis F. Gaffney,* of Meriden, for the appellee
(defendant).

KOSICKI, J.  This is a statutory proceeding
brought by the state of Connecticut under § 17-324
of the General Statutes against the defendant as
conservator of the estate of John B. Fitzgerald. The
case was tried on the following stipulation of facts.

John B. Fitzgerald, upon his discharge from the
United States army, was admitted to Connecticut

Valley Hospital on April 24, 1944. The veterans administration assumed the per capita cost of his care at the state hospital from that date. He has been in and out of the state hospital since that time and was transferred on several occasions to federal (veterans) facilities. On his later admission to Connecticut Valley Hospital on March 12, 1963, the veterans administration again assumed financial responsibility for his care at the per capita cost rate. He was at Undercliff and Connecticut Valley hospitals, both state humane institutions, after the last cited date until his discharge from Undercliff on September 25, 1964. He was admitted to Connecticut Valley Hospital on March 12, 1963, for a service connected disability. When the defendant, the Home National Bank and Trust Company of Meriden, qualified as his conservator on January 24, 1962, his estate consisted of a savings account of $5558.15 and disability compensation checks totaling $450. His disability compensation of $225 per month was modified to $140 per month in March, 1962, and to $149 per month in December, 1962, and continued to be paid to the defendant until March 12, 1963.

On the last cited date, Fitzgerald's disability compensation was discontinued under advice from the veterans administration that payments to Fitzgerald would not be resumed while he remained a patient at a hospital operated by a political subdivision of the United States until his estate should be reduced to $500. On August 6, 1963, the veterans administration assumed financial responsibility for Fitzgerald's care at Connecticut Valley and Undercliff hospitals at the per capita cost rate, $101.96 per week. On November 20, 1963, the veterans administration discontinued these payments to the state of Connecticut. The reason for the discontinuance was that Fitzgerald was eligible for hospital care and treatment at the veterans hospital

in Northampton, Massachusetts. His next of kin had refused to authorize his transfer from Undercliff Hospital to the veterans' facility in Northampton. No benefits or payments were received from the veterans administration by Fitzgerald or the conservator of his estate subsequent to November 20, 1963.

The state of Connecticut has billed the defendant at the rate of $101.96 per week from November 20, 1963, to September 25, 1964. The defendant has paid to the state of Connecticut for the care of John B. Fitzgerald the sum of $35.04 per week from November 20, 1963, to September 25, 1964. The per capita cost for patient care at Undercliff during that period was $101.96 per week, or $14.566 per day, in accordance with the determination of the comptroller of the state of Connecticut furnished to the welfare commissioner in accordance with § 17-295 of the General Statutes.[1] The per capita cost at Undercliff excluding administration, general services, supervision or care of those outside the institution and education and training was $35.04 per week, or $5.006 per day, in accordance with

[1] "Sec. 17-295. SUPPORT IN HUMANE INSTITUTIONS. (a) The comptroller shall annually determine the cost per capita per week for the support of persons in state humane institutions, and such costs shall be comprised of the following items: Administration, food service and operation of farm, general services, care and custody of patients, supervision or care of those outside the institution and education and training. Said comptroller shall annually furnish such itemized per capita cost to the welfare commissioner, who shall determine therefrom the total charges for a patient in any state humane institution. In computing the total charges for such patient, the following items shall be excluded from the per capita cost: Administration, general services, supervision or care of those outside the institution and education and training. (b) . . . [T]he maximum rate to be charged for the support of each patient for the ensuing year shall be the average of such total charges . . . except that, when any such patient is a veteran with a service-connected disability for which he has been hospitalized in such institution . . . , such patient or his obligor shall be liable for a rate . . . up to the maximum per capita cost. . . ."

§ 17-295. The balance of the estate of John B. Fitzgerald held by the defendant amounts to $3221.72 as of the date hereof. The balance due the plaintiff at the per capita cost of $101.96 per week would be $2588.57 through September 25, 1964. The amount due the plaintiff at the rate of $35.04 per week, the per capita cost excluding administration, general services, supervision or care of those outside the institution and education and training, would be zero.

The trial court filed a finding which contained no more than a recital of some of the facts in the stipulation with the court's conclusions. The memorandum of decision became part of the record on appeal; Practice Book § 992; and we have consulted it in order to determine the basis for the conclusions reached by the court on the facts agreed on by the parties.

The only issue before us is whether the trial court erred in concluding that the plaintiff was not entitled to judgment for the maximum charges as defined in § 17-295 (b). This statute, in its present form and so far as it is applicable to the transactions at the time they occurred, does not differ from the act then in force, Public Acts 1961, No. 590. It is undisputed that the maximum charge was $101.96 per week during the period from November 20, 1963, to September 25, 1964, when Fitzgerald was confined in a state humane institution. This charge was made as directed by the statute because Fitzgerald was "a veteran with a service-connected disability for which he has been hospitalized in such institution." From April 24, 1944, when he was first hospitalized in the Connecticut Valley Hospital, the federal government, acting through its veterans administration, had paid the maximum charge during such periods as he was treated in state institu-

tions. In addition, he received disability compensation which ranged from $225 per month down to $149 monthly until March 12, 1963, when further payments were discontinued. By a decision of the veterans administration, compensation payments and also hospitalization payments were not to be resumed, while he remained a patient in a state institution, until his estate should be reduced to $500. In August, 1963, the veterans administration resumed payments to the Connecticut Valley and Undercliff hospitals at the maximum rate but terminated them because Fitzgerald had declined to be moved for treatment to the veterans hospital in Northampton, Massachusetts. Whether he was persuaded by his kin or whether, as stated in the stipulation, they refused to authorize his removal from a state institution to a veterans' facility, there was no alteration in his status enabling him to shift a federal obligation to the taxpayers of Connecticut.

It is the function of the federal government to carry on war, and although the state may by a grant to its citizens encourage them in their loyalty and patriotism in defending our country in a cause common to all citizens; *Lyman* v. *Adorno,* 133 Conn. 511, 519; the state cannot, with propriety, assume the obligation resting on the federal government, honorably assumed and justly discharged, of caring for those who through misfortune have become war's casualties. Nor does our statute, § 17-295 (b), permit of any other construction. It places upon the welfare commissioner the duty to collect from the veteran or his obligor, up to the maximum per capita costs, for benefits conferred on the veteran hospitalized because of a service-connected disability.

The court was in error in concluding that, because the veteran in this case had deprived himself of the hospitalization and treatment offered him at a fed-

eral institution, he was entitled, under subsection (d) of § 17-295, to a determination by the state veterans' home and hospital commission of the amount to be paid by him, or his estate, or the payee of benefits on his behalf. This subsection specifically excludes from its classification of veterans those with a service-connected disability. It should also be noted that subsection (c) of the same statute provides: "Each patient . . . shall be legally liable from the date of admission for . . . [his] support . . . in such institution in accordance with his ability to pay . . . . The guardian, conservator and payee of social security or other benefits on behalf of any such patient shall be similarly responsible for the support of such patient, but shall be liable in such capacity only in accordance with the amount of the patient's estate or the benefits received, or both, as the case may be." The estate held by the conservator and the disability benefits of which, under federal regulations, Fitzgerald is or will become the recipient are more than sufficient to pay the billing as determined by the plaintiff.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the plaintiff in the amount of $2588.57, without interest.

In this opinion PRUYN and DEARINGTON, Js., concurred.