IN

# THE SUPREME COURT

OF

## PENNSYLVANIA.

MIDDLE DISTRICT—HARRISBURG 1865.

## Tyson et. al. versus The School Directors of Halifax Township.

1. An Act of Assembly authorized and required the school directors of a township to borrow money to reimburse to a "bounty association" moneys advanced to free said township from the draft. *Held*, that the act was an authority to reimburse what was intended by the association as advances made to the township with the understanding that it was to be reimbursed or returned to those contributing.

2. An act directing the repayment of money, voluntarily paid by an association in aid of its own members, would not be legislation, but would be in the nature of judicial action, without notice to the parties to be affected by it, hearing, trial, and all that gives sanction to judicial proceedings.

3. Such an act would be unconstitutional in declaring an obligation where none previously existed, and then decreeing payment by directing the money or property of the people to be sequestered to make the payment.

4. A declaration at a meeting of a bounty association, by its president, that " all payments of money to be considered as loaned to the township, in the belief that the legislature will so amend the law as to enable us to throw the expense on the township," is not such an assurance of repayment as is contemplated by the act.

5. The terms of the act do not cover mere voluntary payments of money, contributed as a mutual fund to save the contributors from the draft. The legislature is not to be presumed to have attempted to compel reimbursement of mere voluntary contributions.

APPEAL from the Court of Common Pleas of *Dauphin county*, in equity.

(9)

[Tyson *et al. v.* School Directors of Halifax Township.]

In that court Jacob Tyson and numerous other persons, residents and tax-payers of the township of Halifax, filed a bill praying for an injunction to restrain the school directors of the township from levying and collecting a tax to repay money to reimburse the Halifax Bounty Association for money advanced to free the township from certain drafts.

On 30th of January 1864, a meeting of persons "liable to draft" in Halifax township met for the purpose of devising " some means to fill the quota  *  *  and thus avoid the pending draft." An association was formed, permanently organized, and the following " basis" adopted ;—

" To lay an equal assessment upon each enrolled man—to collect contributions from others outside, thus creating a fund to be expended by a business committee, in paying bounties, in procuring volunteers, and having them credited to us.  In case those subject to a draft fail to pay up, then, after the draft, the funds to be used to pay the commutation of those who have paid and who may have been drafted."

A committee was appointed to draft articles for the government of the association, and, at a meeting held February 3d, reported the following resolutions and a constitution, which were adopted :

" Resolved, That we, citizens of Halifax township, who are subject to military duty, do hereby form ourselves into a society, whose object shall be, to raise money, offer bounties, procure volunteers for the United States service, and have them credited to our township, against the coming draft.

" Resolved, That in order to accomplish these objects, we agree to lay an assessment of thirty dollars upon every man subject to military duty, in this township, and solicit contributions from those who are not subject ; that we will apply the funds so raised to paying bounties to such able-bodied men as shall volunteer, and be accepted by the proper authorities, and be credited to this township on its quota.

" Resolved, That in case any who are subject to duty hang back, thinking to allow this society to clear them from the draft, we will then report to head-quarters every man who is not properly enrolled, allow the draft to take place, and use the funds of the society to pay the commutation of such of its members as may be drafted."

The sixth article of the constitution is as follows :—" In case volunteers cannot be procured by offering bounties, or because the funds are not sufficient, and a draft takes place, the funds of the association shall be retained until after the draft ; and every member of the association who may have been drafted, and who may not be exempted from service (by reason of physical disability or other cause), shall be assisted to the extent of the *last dollar* in the treasury, in raising the money to pay his commuta-

[Tyson *et al. v.* School Directors of Halifax Township.]

tion. And if any drafted member prefers to serve in the army, and is mustered into the service, he shall be entitled to, and shall receive, the same amount, as bounty, that is paid to others toward their commutation."

At a meeting held February 19th 1864, " the time in which any person can become a member of the association was positively limited to next Monday evening; after which time the doors will be closed, and the whole care of the association directed towards securing its own members from draft, while outsiders take care of themselves."

At a meeting, February 27th, it was

" Resolved, That the business committee is instructed to ascertain whether the association can be exempted; and if not, what number of men is to be drafted; that a meeting be then called, and an assessment be laid equally upon each member of the association, to raise a fund sufficient to pay the commutation of the whole number drafted; that the fund be used to pay the commutation of those members of the association who may be drafted and held for service, and for any necessary expenses in procuring exemption for members drafted.

" Resolved, That if any member of this association shall refuse to pay this assessment, and he shall be afterwards drafted, the association will not extend to him any aid."

At a meeting July 21st, it was agreed to throw a note of ninety days for $3000 in bank; and that the committee should proceed to Harrisburg and commence the work of putting in men, if it was decided that the law gave the school directors power to act.

At a meeting July 28th, the president stated that the county commissioners had declined to levy any tax on the county for the purpose of putting in volunteers; and, consequently, the whole matter rests with the township. All payments of money to be considered as loaned to the township, in the belief that the legislature will so amend the law as to enable us to throw the expense on the township * * * The old business committee was likewise continued, with full power to act, according to its judgment, for the best interests of the society; provided, no more than $300 was to be paid for any volunteer. " If the amount of funds paid into the treasury by Saturday night was sufficient to satisfy the committee that our whole quota could be filled, it was to proceed at once to putting in men; but if there was not funds enough, and any doubt existed as to whether there would be, or if any considerable number of those taxed refused to pay, then the whole matter was to be dropped, the money already paid in, refunded, and every man to stand his own risk in the draft."

On the 25th of August 1864 (P. L. 1026), an Act of Assembly was passed, with a preamble reciting that certain citizens of Halifax township, associated as the Halifax Bounty Association, for

[Tyson *et al. v.* School Directors of Halifax Township.]

"freeing said township from the late drafts," advanced money which was expended in paying bounties to volunteers to fill the quota of the township. The act authorized and required the school directors to borrow such sums of money as would "fully reimburse the Halifax Bounty Association for moneys advanced to free said township," &c., and then authorized the school directors to levy and collect a tax to repay the sums borrowed, &c.

The appellants filed the bill in this case, and after answer, replication, and argument, Pearson, P. J., delivered the following opinion and dismissed the bill:—

"The bill, answer and exhibits in this case, present substantially the following facts: When the President of the United States made his call for 700,000 men a society was formed, called 'The Bounty Association of Halifax Township,' the object of which was to raise money to free the members thereof from the draft, and *incidentally* to relieve the township; but it appears to have been part of the articles of association that, if any considerable number of those within the township, who were subject to the performance of military duty, should decline to subscribe the sum agreed on, the effort should not be made to free the township *generally*, but the fund raised should be applied to pay the commutation of $300 fixed by the Act of Congress. The association also raised a considerable amount, by subscription, from citizens not subject to military duty. Many volunteers were obtained, to whom bounty was paid. Eventually a sufficient number had not been put in, according to the computation made by the provost-marshal, and a few were drafted. They were relieved by the society paying the commutation fixed by law. A second call was made by the President for 500,000 more soldiers, and the number to be supplied by Halifax township was again fixed by the United States officers, and all raised according to the computation, by paying large bounties to volunteers. This was not finally effected until the 7th day of September 1864. Subsequently, on the 26th day of the same month, a new estimate was made by the government officers, and it was ascertained that this township had put into the service thirteen more men than filled its quota. The first announcement intimating a liability on the part of Halifax township at large to repay the money advanced by the association was at the meeting on the 21st of July 1864, and the first clear and unequivocal resolution, declaring that it should be a debt of the township, was on the 28th day of the same month. Very much of the money now asked to be refunded had been expended by the Bounty Association before that time. On the 25th day of August following, the act was passed which mainly gives rise to the present controversy. By that act the school directors of Halifax township are authorized and required to borrow so much money as will fully reimburse the Halifax Bounty Association

[Tyson et al. v. School Directors of Halifax Township.]

the money advanced to free the said township from the draft of 700,000 men; also, such sum as will be required to free said township from the present call for 500,000 men; and, in order to repay the money, they are authorized to levy and collect a tax, or taxes, for the full amount, with interest, during the same year, or run the loan and collection through a period not exceeding five years.

Many exceptions have been taken by the complainants to the validity of this Act of Assembly, and to the action of the board of school directors under it.

1st. It is said to have been obtained by fraud and false representations. That no such bounty association existed as is recited in the act. It was not formed to free the township of Halifax from the draft, but to free the members of the association; and the money was not intended to be advanced for the township, but was a free gift of those contributing the fund. The sum of $800 is recited in the act to have been thus furnished, and some $8000 are now claimed under its provisions.

2d. The law is unconstitutional—violates the seventh section of the eleventh article of the amendments of 1857, and also the general provisions of the constitution.

3d. It is proposed to levy and collect a tax to pay for thirteen volunteers furnished, more than the full quota of the township, which is unjust, and not authorized by the Act of Assembly.

4th. The tax assessed and proposed to be collected is illegal, as it imposes five and one-half cents on the dollar of the whole valuation of taxable property in the township, as well belonging to those exempt from the draft as of those subject to it; and,

5th. The law is void, and cannot be carried into effect, as it neither points out the property to be taxed, nor the method of assessing and collecting it when imposed.

The evidence of fraud relied on in the present case is to be found in the preamble to the Act of Assembly, which recites, "that certain citizens of Halifax township had associated together under the title of 'The Halifax Bounty Association,' for the purpose of freeing said township from the draft," and had advanced the sum of eight hundred dollars to fill the quota of said township; and the enacting part of the law states the same in substance; whilst the evidence exhibited in the articles of association proves that the object of the parties was to free *themselves* from the draft. Is this such a fraud as would vitiate the law, and require the court to declare it void, or of no binding effect? Or is such a recital sufficient evidence, *per se*, of a fraud practised upon the legislature?

It has been seriously questioned, in many courts, whether the judiciary possessed the power to declare an Act of Assembly void on the ground that it was obtained by fraud, and the power

[Tyson *et al. v.* School Directors of Halifax Township.]

is expressly denied by the Chancellor of South Carolina, in the case of public acts. See 1 Nott & McCord 400, in note. It is also questioned, and perhaps denied, except as to private acts, then only in a clear case in 10 Conn. R. 538–40, *et seq.* It is said in 2 Black. Com. 346, that a private act "may be relieved against when obtained on false *suggestions,*" whilst the same learned writer appears to deny it as to public acts (see vol. 1, pp. 91, 161) ; whilst his commentator, Mr. Christian, in his note, in terms declares that there is no power in the courts to disregard an Act of Parliament, although contrary to reason, and natural right and justice. I have little doubt as to the law under consideration being in the nature of a private act, although it affects all the people of a township, and enforces what may be considered a public duty. But what evidence has this court that the legislature has been imposed upon by a false representation ? The honesty and fairness of obtaining the law is sworn to in the answer, and all false representations denied. No petitions are produced on the hearing showing that any false statements whatever were made. It is not proved that any were made orally to any member of the legislative body. It is declared by the Supreme Court of Connecticut, in The Derby Turnpike Company *v.* Parks, 10 Conn. 540, "fraud is not to be presumed ; and when this court is called upon in this collateral manner to declare void an Act of the General Assembly, upon the ground that it was fraudulently obtained, this fact should be *clearly proved.*" From aught that has been shown, this recital in the preamble may be the language of the legislative body itself, not suggested by any member of the Halifax Bounty Association, or other person having an interest in the repayment of the money advanced. We are not satisfied from the whole case that this law was obtained by fraud, or the legislative mind deceived or misled.

Is the averment false in any material or essential point, from which we can infer that the legislature was deceived ? It is stated in the preamble that this association was formed to free the township from the draft. The answer shows that it was composed of one hundred and sixty-one citizens of Halifax township, nearly all of whom were subject to the draft, and this must constitute almost the entire population of the township coming within that description. Suppose that there were ten or even twenty citizens outside of the association who were subject to military duty, was not the *substantial object* to free the township from the draft ? If all the military men are freed, the township is discharged. But it is averred in the bill that there was no such association. The answer and documents produced prove that such an association existed in *substance,* and was so generally called, whilst the true designation was "The Bounty Association of Halifax Township." It was not an incorporated society, but was self-formed and self-

[Tyson *et al. v.* School Directors of Halifax Township.]

christened ; and a mistake in reciting the name in the statute will not vitiate the law, or prevent those who actually advanced the money from recovering it back, with the same efficacy as if designated by the right name, provided we are satisfied that this was the society intended, and that there was none other in the township formed for any similar purpose. It has been held that no mere misnomer in the name of a person or corporation mentioned in an Act of Congress is fatal to its validity, if the person or corporation really intended can be collected from the terms of the statute : 3 Sumner 279. There can be no possible doubt but this was the society intended.

It is said that this money was not *advanced,* but was a free gift. It is very true that the term "*advanced*," as here used, carries with it an implication that those furnishing the money expected to have it refunded, whilst there is nothing in the original proceedings of this society which proves that such was the expectation, until after a large portion of the money had been paid in bounties, yet such may have been the hopes of those giving the fund, and if the legislature chose to authorize its repayment by the citizens of the township, and the township authorities accepted of that grant of power, we are unable to see why they should be restrained in their action by a court of equity. The tax-payers of the township have, to a great extent, had the benefit of that *advance,* and could, under the Act of the 25th of March 1864—a law passed soon after this society was formed, and before its money was raised—have been obliged, by the imposition of taxes, to have paid the whole bounty-money. The fund furnished by the society really went in relief of the township to that extent. We shall advert to some other matters connected with this objection when examining the constitutionality of the law.

The preamble of this act recites that eight hundred dollars was expended by the society, and about eight thousand dollars is now claimed under the enacting clause, which requires the school directors to refund all the money expended by it in putting volunteers into the service to free the township from the draft. The answer of the respondents avers that there is a mistake in the preamble, that eight thousand dollars were claimed, and the bill was so prepared and passed both branches of the legislature, but a mistake was made by the clerk in transcribing. From the production of the original bill, as prepared by the member from this county, it is very clear that a mistake was committed. If this were in the enacting clause the respondents would be without remedy ; they would have to take the law as they found it on the statute book ; but, fortunately for their position, the preamble of a statute is no part of it for purposes of this kind. It may be used to show the *motive* of the legislature and general *intent* in passing the law, but the enacting clause often goes beyond it, and

will control: Dwarris on the Stat. 503–4; also, 659 to 664. It rarely shows the full meaning of the legislature: Dwarris 504, 506–7. Can sometimes be called in aid where the construction is doubtful: Sedgwick 54, 55. But often has little weight, and none whatever against the plain expressions of the enacting clause: 1 Pick. 248.

It often misstates, or does not fully state, the whole object of the legislature: 7 Gill. & John. 274–5.

It is no part of the law, and not binding: 3 Scammon 465, 4 S. & R. 166, and other cases in this state to the same effect. As the law enacted covers this whole claim, it must control the preamble, and not be controlled by it. A court of equity would scarcely interfere to enforce a plain mistake; it is rather its province to guard against it.

2. Is this law constitutional? Where no debt or duty is owing by a city, borough, or township to an individual or company, we think it transcends the power of the legislature to compel it to make payment. It might as well attempt to enforce an individual to pay money to another where nothing was due, or take one man's property for the benefit of another. If a legal right exists the legislature may afford a remedy, or if the one party owes a moral duty *possibly* it may be enforced by a special law.

The citizens of Halifax township owed military service to the United States, and the board of school directors, under the general law, was authorized to offer bounties to induce volunteers to enter the army and perform that service, and to assess a tax on the property of the township to pay those bounties. This association came forward and paid the money and procured the soldiers. It was a voluntary payment, which could not be recovered, but the legislature gave a remedy by requiring the school directors, as representatives of the township, to refund the money and charge it on the general property. I am well satisfied that the legislature could not *require it;* that it transcended their power. But if the corporate authorities of the township choose to accept the loan and perform the duty, I know of no power in the citizens or the court to restrain them. The school board is, for this purpose, made the representative of the township, both by the general law on the subject of bounties and the special act relating to this township; and although created and elected for a different object, yet they, as well as any other corporate body, or set of township officers, may be designated to represent the municipality in this particular. When so appointed by law, the powers under the statute accepted and the tax laid, we cannot restrain its collection or prevent the money from being paid over according to the provisions of the Act of Assembly. There are very many matters to be found in the various bounty laws which transcend the power of the legislature, such as those requiring bounties to be paid to

men who had previously voluntarily entered the service without any contract to receive compensation, or had agreed to take a much less sum from the township than was afterwards fixed by law; yet if the township officers choose to accept the conditions, and resolve to make payment as provided by the statute, we cannot restrain their action. It may be an abuse of their discretion, but the law has conferred the right to judge on them, and not on the courts.

A greater doubt arises on the wording of the seventh section of the eleventh article of the constitution of this state, which, after declaring that the legislature shall not authorize any county, township, &c., by virtue of a vote of its citizens, or otherwise, to become a stockholder in any company, association, &c., says:— " Or to obtain money from, or loan its credit to, any corporation, association, institution, or party." If this were clearly a debt due by the township, as such, it most certainly would not come within the inhibition of the constitution. It never was the intention of the people in framing that instrument to prohibit a municipality from paying its honest debts or performing its moral or legal duties. It is denied that this was a debt or moral duty of the township. It was no *debt*, in legal acceptation, so far as concerns this bounty association; but if the money was advanced in relief of the township, which could have been lawfully collected off the property of the citizens, and this association voluntarily paid it, from selfish motives we may assume, would there not be a moral obligation on the part of the citizens to refund? If such is the case, it can in no sense be said that the law has authorized the township " to *obtain money* for an association or party." In construing these words we must look at the evil which it was designed to guard against. Those municipalities had lent their credit to various railroad companies and other corporations to such an extent as seriously to burden and impair the value of the property situated within them. The state had also suffered in its own treasury from the same course of proceeding, and it was resolved that the evil should not again recur; and hence such laws were prohibited by these amendments to the constitution. This case does not come within the spirit or intention of the prohibition.

3. It is proposed to pay, by a tax on the citizens, for thirteen volunteer soldiers put into the service more than was required for the full quota of Halifax township. This is to be regretted; but it arose from a mistake, not of the township officers or the bounty association, but of those intrusted with the performance of the duties by the United States. It appears that several changes occurred, from time to time, as to the number of men required from this township. Every effort was made by the citizens to have the number reduced or the errors corrected. It was not

1 P. F. SMITH—2

[Tyson *et al. v.* School Directors of Halifax Township.]

done, and a draft was apparently inevitable. The volunteers were then procured, and the bounty paid. Every man was put into the service and received his bounty by the 7th of September, and the error was not corrected until the 26th day of that month. When discovered the men could not be recalled, nor could the bounty be restored. It is one of those cases where the present respondents were in no default. The Act of Assembly, requiring the money to be refunded, or paid out in bounties, was passed on the 25th of August, and all then due was required to be paid to the association, and the draft about to be made provided against. Under such circumstances we are not prepared to say that the tax is illegal. If a loss is to be borne it is more fair to throw it on the township at large than upon individuals, or officers who are in no default. If the people are obliged to pay some additional tax on account of this error, they will at least have the consolation of knowing that the men they procured are in the service of the country, and also that, in case of another draft, which now appears imminent, they will be entitled to a credit of thirteen men in the beginning.

4. This tax is said to be illegal from its excess. By the general law but two per centum per annum can be imposed on the property of the citizen to meet these payments of bounty; but this law, in terms, authorizes the school directors to borrow the money on five years' credit, and lay a tax to meet it.; or they " may proceed *at once* to assess and collect the *full amount* of money required"—such is the letter of the statute. It is left to the discretion of the school board, and although we may consider it an abuse of that discretion, and an impolitic and unjust course towards the tax-payer, yet we have no control, and cannot forbid these gentlemen from pursuing and carrying out the law of the land. For aught we know, a large majority of the citizens may desire that course to be pursued, and prefer meeting the burden at once.

5. It is contended that this special act is so imperfect that it cannot be carried into effect—no system of levying and collecting taxes has been devised, nor is the property pointed out on which it is to be assessed. It rarely happens, under our system of legislation, that any one law is perfect in itself. We are generally obliged to refer to others for the details, and sometimes to resort to common law forms and principles to carry the statute into effect.

If money were ordered to be raised by taxation, for the use of a county, to effect some new object not contemplated by former laws, the commissioners, or other constituted authority, would resort to the law regulating assessments for county rates, and impose the taxes on similar property, and at like valuation, unless the statute directed otherwise. The same rule will apply to school

[Tyson *et al. v.* School Directors of Halifax Township.]

directors. When they are ordered to raise money by taxation, and nothing further is stated, it 'clearly means by the ordinary system of taxation in the state—the same by which they raise other moneys for the use of the township. Statutes *in pari materiâ* should be taken into consideration in construing a law (3 Howard U. S. R. 556), and must frequently be resorted to in carrying it into effect. So far as this act directs a change it must be observed, as in the capitation tax. It must be conceded that this statute is very imperfect, and evinces hasty and inconsiderate legislation, but yet it may be carried out without serious difficulty. We cannot help seeing the injustice of relieving widows from the capitation tax, apparently because they are not subject to military duty, and yet leaving spinsters, owning property, to bear the burden. Other particulars might be pointed out, and the general policy of the law, and all others of like character, is very questionable. The propriety of repaying the money voluntarily advanced by this bounty association is not readily perceived; yet, if thought to be expedient by the legislature and the township officers, the court cannot call it in question.

It is very possible that more money is attempted to be raised under this bill than has been advanced, or can be legally claimed, yet no error has been pointed out. If any is committed in assessing the property of a citizen, he can have redress by an appeal to the Quarter Sessions under the Act of Assembly; but it would be improper and illegal for this court to tie up the hands of the school directors by an injunction, unless for error clearly defined. None such is perceived here, and, therefore, the bill must be dismissed at the costs of the complainants."

*J. C. Kunkel, R. A. Lamberton,* and *J. W. Simonton,* for the appellants.—The object of the association was to free themselves; the only object was to secure its own members from draft. There is no evidence that there was a hope in those giving, that the money would be refunded. It was not the object to free the township.

The object was to be attained by *assessing* $30 on each member, and soliciting *contributions* from those not liable. Money so raised, cannot be said to be loaned or "advanced."

It may be doubted that the legislature can require school directors to borrow money to free a township from an impending draft; but certainly it cannot require them to borrow money to pay an existing debt of a bounty association.

The language of the act is imperative; the directors have no discretion. But if they had discretion, all the directors but one being members of the association, they have determined to borrow money to refund to themselves money which they had no thought of receiving back when they paid it.

Before the passage of the law, the township owed them nothing;

[Tyson *et al. v.* School Directors of Halifax Township.]

the act creates a debt in their favour, and gives them power to enforce its payment.

It is claimed that the act authorizes the payment for more men than were needed to fill the quota. This act, providing a mode of taxation out of the course of the ordinary laws of taxation, is to be strictly construed: Bennett *v.* The Borough of Birmingham, 7 Casey 15–17; Goepp *v.* Borough of Bethlehem, 4 Id. 255.

The wisdom and expediency of the act are not open to discussion. The naked question is, does the statute contravene the fundamental law as contained in the constitution? Dartmouth College *v.* Woodward, 4 Wheat. 696; People *v.* Manhattan Company, 9 Wend. 351. To overthrow the presumption in favour of the constitutionalty of a law, it must appear and be shown to violate the constitution: Ex parte McCullem, 1 Cowen 564; Morris *v.* The People, 3 Denio 338; Erie *v.* N. E. R. R. Co., 2 Casey 303.

The Constitution (Art. XI., § 7) prohibits a township from obtaining money for or loaning " its credit to any corporation, association, institution, or party." Statutes such as the present had, before this provision in the constitution, been declared constitutional: Sharpless *v.* The Mayor of Philadelphia, 9 Harris 147; Commonwealth *ex rel.* Thomas *v.* Commissioners of Allegheny County, 8 Casey 218.

The evil of such laws became serious, and the constitution was amended by Article XI. This law is in the teeth of this explicit provision. The money was voluntarily advanced to escape a personal service, with no hope of repayment. It was no debt upon the township, and differs nothing from a subscription to a railroad company; one would be to a corporation, the other to a voluntary association. The act attempted to create a debt against the township, which would be a judicial act, decreeing a liability when none had been incurred. It was therefore unconstitutional: Mengel *v.* Dentler, 9 Casey 495; Sharpless *v.* Mayor of Philadelphia, 9 Harris 169; Philadelphia Association *v.* Wood, 3 Wright 82; Soens *v.* City of Racine, 10 Wis. 279.

*D. Fleming* and *C. C. Rawn,* for appellees.—The proceedings of the association show its object to be to devise means to fill the quota of the " township," avoid the draft, * * * and to raise money to procure volunteers to be " credited to Halifax township." All the other provisions were in harmony with this view and *in terrorem,* to bring in as many as possible to share the burden.

The legislature had passed a general law, *requiring* counties and townships to complete all contracts for filling quotas by refunding advancements made. Legislation of the same kind was had by numerous special laws. The action of the people at

home, as well as of their representatives, shows that paying bounties was considered a duty which property-holders owed then to their country. This, then, being a debt or moral obligation, does not come within the constitutional prohibition; the association lent its credit to the township. If this act is unconstitutional, all general and special bounty laws, since the commencement of the war, are unconstitutional. These laws, by the almost unanimous consent of the people, have been acquiesced in. This court will not disturb the act unless shown to be clearly unconstitutional.

The opinion of the court was delivered, June 25th 1866, by

THOMPSON, J.—The point which will engross our attention in this case is, whether the school directors of Halifax township are authorized, by the special act of the 25th August 1864, to levy and collect a tax to repay money borrowed to reimburse the "Bounty Association of Halifax Township" for money expended by it to procure volunteers to fill the quota of the township under the call of the President therein mentioned for troops. Other questions are incidentally discussed in argument; but the material point is this mentioned, and to it this opinion will be confined, without the expression of any opinion on the others.

The act mentioned "authorizes and requires" the school directors to borrow money to reimburse the "Halifax Bounty Association" moneys advanced to free said township from the draft, &c.

The first inquiry therefore is, were the moneys paid out by the association, advancements in aid of the township within the meaning of the act, or only an appropriation by it of the voluntary contributions of its members to relieve themselves.

The expression "moneys advanced" in its connection in the act must be understood in a business or commercial sense, and that is defined by Webster, to be "giving beforehand, furnishing of something on contract, before an equivalent is received, as money or goods, towards a capital or stock, or on loan. A furnishing of money or goods for others in expectation of reimbursement."

We are bound to regard the statute as an authority to reimburse what was intended by the association as advances made to the township, with the intent or understanding, to be reimbursed or returned to those contributing. This was the light in which the learned judge below regarded the terms used; and unless this appears in support of the present levy by the school directors, they are acting without authority. But the learned judge, if I properly comprehend his meaning, did not give sufficient importance to these terms, and hence I apprehend he fell into error. He does not seem to have considered it material whether the association paid its money voluntarily in aid of its own members, or expressly

[Tyson *et al. v.* School Directors of Halifax Township.]

to aid the township in saving its people from a draft, with the understanding that it was advanced in the character of a loan, if the legislature chose to direct its repayment, and the school directors chose to act upon the authority conferred. This we cannot agree to. Such an enactment would not be legislation at all. It would be in the nature of judicial action it is true, but wanting the justice of notice to parties to be affected by the hearing, trial, and all that gives sanction and force to regular judicial proceedings; it would much more resemble an imperial rescript than constitutional legislation; first, in declaring an obligation where none was created or previously existed; and next in decreeing payment by directing the money or property of the people to be sequestered to make the payment. The legislature can exercise no such despotic functions, and as it is not apparent in the act that they attempted to do so, we are not to presume they did. They evidently intended the *advancements* to be reimbursed, to be only such as were made on the faith that they were to be returned.

Construing the act in *pari materiâ* with the general act passed on the same day and on the same subject,—and we think we ought so to construe it, 1 Kent 63,—such reimbursements are required by the first section of the act, Pamph. L. 1864, p. 185–6, to be made to parties making advancements to the municipal districts therein mentioned under an understanding or agreement that they would be reimbursed. As already seen, this is the commercial meaning of the words to "advance money," and is consistent with the other legislation on the subject, and in *pari materiâ*. Moreover, the legislation would not be unconstitutional, as it would be in the aspect above noticed.

Taking this for the meaning of the authority conferred, was the money expended by "the bounty association," contributed by its members with a view to aid the township to free itself from the draft, and with an understanding that it was to be reimbursed, or was it voluntary and to free themselves from the draft or liability to be drafted?

This is a most material part of the defence to the bill, and the first member of the proposition is alleged in answer to the charge of the bill, but it is claimed that the last part alone is true; does the proof sustain this answer?

After a most careful examination of the proceedings of the association, nothing like an assurance of repayment to the members of it is to be found, excepting that at the last meeting; as I understand it to have been, held on the 28th of July 1864. On that occasion, as the minutes show, the president, after stating that the county commissioners had refused to levy a tax for the payment of bounties under the call for 500,000 volunteers, expressed the opinion, it was no more, for want of authority, that all payments to

the association and expended by it would be considered as loaned to the township, and the belief that the legislature "would so amend the law as to enable us to throw-the expense on the township." This was not in shape an agreement, for the president neither so represented, nor had the authority to do so, nor was it anything from which an understanding to the effect that the parties paying would be reimbursed, nor is there a syllable to show that any one did contribute on the faith of it. The largest portion of the funds had been collected and expended before that time.

· But to take a step backwards : does it appear in the proofs that the association was organized for the purpose of aiding the township to free itself of the draft, or was not the purpose of the associa- · tion formed to free its own members from it ?

The theatre of its action was exclusively the township of Halifax— its members were not liable to draft elsewhere. In protecting themselves from the draft they necessarily relieved the township to that extent. This fact does not prove that they were acting for the township. In fact, that corporation was not at the time acting for itself or asking aid. The fact of contributing to the township, · or rather advancing money to it with an understanding to be reimbursed by it, is a fact to be proved, and cannot rest in presumption. But is the fact proved ? Certainly I have seen no evidence to that effect. I think that it appears by the proceedings of the association in making their organization and afterwards, that the sole object of its care and effort was not the township, but its own members.

The first of the preliminary resolutions, passed as introductory to the constitution and reported by the committee on organization, declares " that we the citizens of Halifax township who are subject to military duty, do hereby form ourselves into a society whose object it shall be to raise money, offer bounties, procure voluteers for the United States service, and have them credited to our township against the draft." All this the association proposed to do themselves, and not to aid the township.

But the third resolution is still clearer as to the object. It declares, " that in case many who are subject to duty, hang back, thinking *to allow the society to clear them, we will* then report to head-quarters every man who is not properly enrolled, allow the draft to take place, and use the funds of the society to pay the commutation of such of its members as may be drafted."

Nothing is plainer than the intention here declared—that the society had in view the mutual protection of each member without reference to the township, further than its assigned *quota.*

The constitution itself evinces fully the same purpose. In art. 6, it is provided that if the funds of the association are not sufficient, and a draft takes place, they are to be retained until after the draft, and then " those of the members drafted are to be assisted

to the extent of the last dollar in the treasury." Consistently with this object, at the meeting of the association on February 19th 1864, it was resolved that after the next meeting the "doors of the society will be closed, and the whole care of the association directed towards securing its *own members from draft,* while outsiders must take care of themselves." Accordingly at the next meeting it appeares by the minutes, that the books were opened and membership solicited—whether ever opened afterwards for that purpose, we do not know ; it does not appear.

This is the proof on these points and necessary to the defence, viz., that the money was advanced for the township on the understanding to be reimbursed. Had anything of the kind been in view of the association it would doubtless have appeared on the minutes, for they are exceedingly well kept, and easily to be understood. There is no other testimony in the case. We think the complainants have established their case, and that the terms of the act do not cover the case of mere voluntary payment of moneys, contributed as a mutual fund to save the contributors from draft. The legislature is not to be presumed to have attempted to exercise the power to compel the reimbursement of mere voluntary contributions, let the object be ever so beneficial, praiseworthy, or patriotic. We must therefore reverse the decree of the court below, and decree that the respondents be enjoined from collecting any portion of the sum of $23,500, assessed to reimburse the Halifax Bounty Association for money paid out by it to save the members of the association from the draft mentioned in the act set forth in complainants' bill.

The proof has failed to establish the fact that the money was advanced for the township ; and of necessity no understanding or agreement that it should be reimbursed by the township could have existed. The case proved does not bring the action of the school directors within the terms of the act, and for that reason their action cannot be sustained.

DECREE.—This cause came on to be heard at the May term of this court, for the Middle District, held at Harrisburg, and was argued by counsel. And now, June 25th 1866, it is considered, adjudged, and decreed, that the decree of the Court of Common Pleas of Dauphin county, made therein, dismissing the complainants' bill, be reversed, and the defendants, and every of them, their agents, officers, and all persons acting by their authority, and every of them, be and they and each of them are perpetually enjoined from levying and collecting, or collecting, being already levied, the sum or any portion of the sum of $23,500 assessed by them upon the township of Halifax, in the county of Dauphin, under pretence of

[Tyson *et al. v.* School Directors of Halifax Township.]

reimbursing the "Bounty Association of Halifax Township," otherwise called in the Act of Assembly of the 27th of August 1864, the "Halifax Bounty Association," for moneys alleged to have been advanced by said bounty association to the township of Halifax, and from paying over to said association any moneys which may have been collected under that pretence, and that the respondents pay the costs of the suit.