# Weaver, Grose, Langhart & May, Inc., v. Myers

*H. Albert Lehrman* and *Samuel M. Rosenzweig*, for plaintiff.

*Thomas D. McBride*, Attorney General, and *Edward L. Springer*, Deputy Attorney General, for defendant.

KREIDER, J., November 17, 1958.—This is a proceeding in equity in which plaintiff, a domestic business corporation,[1] seeks to have this court restrain the Sec-

---

[1] Plaintiff was incorporated December 3, 1956, and prior thereto it was a partnership.

retary of Banking of the Commonwealth of Pennsylvania from enforcing a cease and desist order which he issued against plaintiff involving the provisions of the Consumer Discount Company Act of April 8, 1937, P. L. 262, as amended, 7 PS §761-1 et seq. The case is before the court on plaintiff's complaint, defendant's answer and a stipulation of facts filed by the parties. The cease and desist order avers that plaintiff is engaged in the conduct of a general insurance business in Pittsburgh and that:

"WHEREAS, the said partnership of Weaver, Grose, Langhart and May is engaged in the business of lending money in sums of Two Thousand ($2,-000.00) Dollars, or less, for the purpose of enabling individuals to pay premiums on insurance policies purchased through the insurance agency of Weaver, Grose, Langhart and May, or through other insurance agents, and,

"WHEREAS, the said Weaver, Grose, Langhart and May is charging, collecting, contracting for, or receiving interest, discount, bonus, fees, fines, commissions, charges, or other considerations which aggregate in excess of six per cent (6%) per year on the amount actually loaned or advanced, or on the unpaid principal balances when the contract is payable by stated installments contrary to the Act of Assembly No. 66 approved April 8, 1937, P. L. 262, as amended, entitled the 'Consumer Discount Company Act.'

"NOW, THEREFORE, Notice is hereby given to the said Weaver, Grose, Langhart and May and its partners to cease and desist immediately from the operation of such business heretofore conducted in violation of the laws of this Commonwealth."

Plaintiff contends it is *selling* insurance policies on a credit and installment plan and that in so doing it does *not* negotiate or *make loans* or advances of money

or credit within the meaning or scope of the Consumer Discount Company Act and that the said statute has no application to plaintiff's sale of fire and casualty insurance policies.

### Discussion

Section 3A of the Consumer Discount Company Act of April 8, 1937, P. L. 262, as amended by Section 1 of the Act of June 20, 1947, P. L. 665, 7 PS §761-3, prohibits persons, partnerships, associations and foreign business corporations from engaging in the business of negotiating or making loans or advances of money or credit in the amount of $2,000 or less, and section 3B provides:

"B. On and after the effective date of this act, *no domestic business corporation* organized under or existing by virtue of the Business Corporation Law of this Commonwealth, and no director, officer, employe, agent or member of such corporation, *shall engage* or continue to engage in this Commonwealth, either as principal, employee, agent or broker, *in the business of negotiating or making loans or advances of money or credit,* in the amount or value of two thousand dollars ($2000) or less, and charge, collect, contract for or receive interest, discount, bonus, fees, fines, commissions, charges, or other considerations which aggregate in excess of six percent (6%) per year on the amount actually loaned or advanced, or on the unpaid principal balances when the contract is payable by stated installments, *without first obtaining a license* from the Secretary of Banking of the Commonwealth of Pennsylvania in accordance with the provisions of this act." (Italics supplied.)

Section 17 of the Consumer Discount Company Act of April 8, 1937, P. L. 262, as amended by section 1 of the Act of May 23, 1947, P. L. 296, 7 PS §761-17, in its relevant part provides:

"Section 17. Scope of Act. — This act shall not affect any existing laws, special or general, authorizing a charge for the loan of money in excess of interest at the legal rate. This act shall not apply to any person, persons, partnership, association or corporation operating under the laws related to banking institutions, building and loan associations, credit unions or licensed under the Small Loans Act, approved June seventeen, one thousand nine hundred fifteen, and supplements or amendments, or licensed by the Secretary of Banking of the Commonwealth of Pennsylvania under the provisions of any other statute. *This act shall not apply to any bona fide sale of personal property* by a person regularly engaged in the sale of such personal property, wherein the purchaser may pay any part or all of the purchase price *in stated installments,* nor to any such bona fide sale under a conditional sale contract, lease or bailment, wherein the purchaser, lessee or bailee has the option of becoming, or is bound to become, the owner of the property upon full compliance with the terms of the agreement. . . ." (Italics supplied.)

Plaintiff in its brief limits its argument to three points: (1) The exemption contained in section 17 of the Consumer Discount Company Act eliminates the present plaintiff from being bound thereby because "selling insurance, which is personal property, on the installment plan is no different than selling other items in the retail field"; (2) the relationship between plaintiff and its clients is that of a vendor-vendee and not a borrower-lender and that until the latter relationship is established the Consumer Discount Company Act should not apply; (3) even if the relationship is that of borrower-lender, the charges made are not usurious or in violation of the Consumer Discount Company Act.

Defendant contends that *plaintiff, in personally paying* to insurance companies *the cost of insurance policies* issued to plaintiff's customers and requiring such customers to repay plaintiff on an installment basis, is lending money to such persons within the meaning of the Consumer Discount Company Act and at interest rates in excess of six percent per year, and since plaintiff is not licensed under that act, its practice is in violation of the law.

Defendant further contends that plaintiff's practice of lending money to its customers does not come within the exception in section 17 of the Consumer Discount Company Act exempting therefrom sales of personal property on credit for the reason that the *initial issuance* of insurance policies *does not constitute sales* of such policies. Furthermore, defendant asserts that plaintiff cannot claim the exemption contained in section 17 of the act even if the issuance of an insurance policy constituted a sale thereof because such exemption would be *available only to the owner*, which in such case would be *the insurance company* issuing the policy and *not* plaintiff.

I. *Does Plaintiff's practice of paying its customers' insurance premiums constitute the making of loans or advances of money or credit?*

The stipulation of facts discloses that plaintiff advances to insurance companies the premium due to them upon insurance placed by plaintiff as an insurance agent or broker. Plaintiff then collects on an installment basis from its customers the amount of money advanced for the payment of their policies, together with additional charges that *exceed* six percent per year on the amount actually advanced to the insurance companies. Defendant contends that plaintiff's practice constitutes the making of loans or advances of money or credit within the meaning of the Consumer Discount Company Act.

Reference is made in the briefs of plaintiff and defendant to three Dauphin County decisions: Professional Service Credit Association, Inc., v. O'Hara, 40 D. & C. 291 (1940); Medical Dental Business Service of New Jersey, Inc., v. Morrison, 51 D. & C. 552 (1944); General Motors Acceptance Corporation v. Freeman, 57 Dauph. 376 (1946).

One of the principles underlying the decisions of the appellate courts and the Dauphin County cases mentioned, is that the court has a duty to examine the substance of the transaction as well as its form: Simpson v. Penn Discount Corporation, 335 Pa. 172, 175 (1939), wherein the Supreme Court also stated that: "The statute against usury forms a part of the public policy of the state and cannot be evaded by any circumvention. . . ."

In Medical Dental Business Service of New Jersey, Inc., v. Morrison, supra, Judge Mays, specially presiding, said, on page 559:

" '. . . The court will look to and construe the transaction by its substance and effect, rather than its form, and if, from a consideration of the whole transaction, it becomes apparent that there exists a corrupt intent to violate the usury laws, the court will permit no scheme or device, however ingenious, to hide the face of usury': 66 C. J. 174, §64."

In that case the court sustained the Commonwealth's contention that the plan worked out by the credit association to advance money to purchase from doctors, surgeons and dentists, at a discount of more than six percent, notes given by patients of the latter containing their promise to pay the same, was not an outright purchase of commercial paper *but the making of loans* in violation of the Consumer Discount Company Act. See also Professional Service Credit Association, Inc., v. O'Hara, supra.

It is true that in General Motors Acceptance Corporation v. Freeman, supra, it was held that *assignments* at a discount from retail automobile dealers of the obligations of customers, evidenced by notes secured by chattel mortgages on the customers' motor vehicles, which assignments transfered and vested in the assignee, General Motors Acceptance Corporation, all the rights and remedies previously vested in the assignor and made no provision for the return of the money by the assignee, *were sales* even though the sales were made with recourse to the assignor in case of default. This court, speaking through Judge Rupp, stressed the fact that, as pointed out by Judge Mays in Medical Dental Business Service of New Jersey, Inc., v. Morrison, supra: "Each transaction of this type must be closely scrutinized in the light of its own particular facts and circumstances," and held that plaintiff, General Motors Acceptance Corporation, was *not* making *loans* to the dealers *but purchasing* the obligations from the dealers and that such assignments, not being loans but sales, did not come within the purview of the Consumer Discount Company Act of April 8, 1937, P. L. 262, as amended, 7 PS §761-1 et seq., supra. Consequently, this court enjoined the execution of the cease and desist order issued by the Secretary of Banking against plaintiff in that case.

Plaintiff also cites other decisions which hold that the discounting of negotiable and nonnegotiable paper was a sale thereof: Personal Discount Company v. Lincoln Tire Company, 67 D. & C. 35 (1949); Lansdowne Finance Company v. Prusky, 120 Pa. Superior Ct. 555 (1936). We think these authorities should be distinguished from the case at bar in that those cases involve *subsequent* transfers of commercial paper and *not its original creation* as occurs in the making of an insurance contract.

In Tyson v. The School Directors of Halifax Township, 51 Pa. 9 (1855), the Supreme Court defined *"advances of money"* as "a furnishing of money or goods for others in expectation of reimbursement". In Insurance Company v. Dutcher, 95 U. S. 269, 272 (1877), the United States Supreme Court held that the lending of money to a person does not require that such person actually receive the moneys loaned, where the lender confers a benefit to the borrower in moneys worth equal to such loan by satisfying an existing indebtedness.

Under all the circumstances in the instant case, we think that plaintiff's practice in advancing insurance premiums for its customers constitutes "making loans or advances of money or credit" within the meaning of section 3 of the Consumer Discount Company Act.

II. *Does plaintiff's advancing insurance premiums for its customers constitute a sale of personal property within the exception of section 17 of the Consumer Discount Company Act?*

Section 17 of the Consumer Discount Company Act excepts from the operation of that act:

". . . any bona fide sale of personal property by a person regularly engaged in the sale of such personal property, wherein the purchaser may pay any part or all of the purchase price in stated installments. . . ."

Apparently plaintiff's principal object as an insurance agent or broker is to bring into existence an insurance contract between other insurance companies and third persons who are customers of plaintiff.[2] The act of an insurance company in assuming a contingent liability by contract to pay money does not constitute a "sale of property". This principle was relied upon by

---

[2] Plaintiff avers in its brief that "the credit phase of the business actually amounts to less than ten (10%) percent of the gross volume of plaintiff's business."

the Circuit Court of Appeals, Fourth Circuit, in Helvering v. Stein, 115 F. 2d 468, 471 (1940), in a somewhat parallel situation. In that case the court had to determine, for tax purposes, whether a person drawing a draft by which he contractually obligated himself to pay a certain sum of money to a bank was actually "selling" the draft to the bank. After citing various Federal and State decisions, the court said:

". . . The rationale of these decisions seems to be that a promissory undertaking to pay money is not property in the hands of the person who makes the promise or agreement; for obviously, a person has not, and cannot have, a valid legal claim against himself in the same legal capacity. The negotiation of such paper creates for the first time a legal claim against the negotiator, so that this transaction is a negotiation and not a sale. After such a negotiation, however, a subsequent transfer of the paper may very well be, and usually is, a sale. The original negotiator here did not transfer a claim which he already had; rather did he, by the negotiation, create a claim for the first time."

While in the instant case we are dealing with the creation of an obligation by insurance companies to pay money, and not with an obligation to pay money based upon a draft, yet the principles involved in the two instances appear to be the same. The promissory undertaking of the insurance company to pay money is not property in the hands of the insurance company. The entering into the contract between the insurance company and the insured creates for the first time a legal claim against the insurance company but in the light of Helvering v. Stein, supra, we doubt that the transaction in the instant case is a sale, although a subsequent transfer of the policy by the insured may be a sale. We believe the issue in this case, however, is limited to the *creation* of the contract *and not a subsequent transfer* of it by the insured.

III. *If the issuance of an insurance policy is a sale of personal property, would plaintiff, as distinguished from the insurance company, be within the exemption?*

Plaintiff's transactions involve two distinct operations. First, as an insurance agent or broker, it causes an insurance contract to be created between an insurance company and a third person. Second, an independent transaction takes place between plaintiff and such third person in which moneys are advanced by plaintiff to the insurance company for the insurance premium, in return for which the insured person becomes a debtor to plaintiff and not the insurance company.

Even if the issuance of an insurance policy constitutes a sale of personal property, plaintiff could not avail itself of the exemption in section 17 of the Consumer Discount Company Act because it is *not plaintiff* which would be selling a contract right to the insured. If any sale occurs, it is between the insurance company and the insured, with plaintiff acting merely as an agent or broker. In the instant case, the insurance company, i.e., the "seller", is not extending the credit, but such credit is being extended by plaintiff, a stranger to the insurance contract, by means of an independent transaction between it and the insured.

The exemption granted in the Consumer Discount Company Act, as set forth in section 17 thereof, for personal property sold on credit, was merely a reaffirmation of the long existing principle that a seller of personal property was free to bargain for a larger consideration, without being subject to usury laws, when he sold his property on credit. This is the doctrine of Equitable Credit and Discount Company v. Geier, 342 Pa. 445, 455 (1941). In that case, the Supreme Court stated that it has been uniformly held that "sellers are free to contract with buyers as to the terms and conditions of sales", and that such trans-

actions have never been considered subject to the prohibition of usury.

In Melnicoff v. Huber Investment Company, 12 D. & C. 405, 408 (1929), in an action to recover usurious interest, the Municipal Court of Philadelphia County stated:

"Summing up the matter, the law seems to be settled that usury can only attach to a loan of money or to the forbearance of a debt and that on a contract to secure the price or value of work, the labor done or to be done or property sold, the contracting parties may agree on one price if cash is to be paid and upon as large an addition to cash price as may suit themselves if credit be given, and it is wholly immaterial whether the enhanced price is ascertained by the simple addition of a lumping sum to the credit price or by a percentage thereof."

In the instant case plaintiff's practice does not constitute a transaction where the "owner", i.e., the insurance company, increases the premium because of the inconvenience of installment payments. In fact, the insurance company receives *immediate payment* and the credit is extended by plaintiff, a stranger to the insurance contract. Therefore, we believe that if it be assumed that the issuance of an insurance policy constitutes a sale of personal property, the practice of plaintiff-broker of extending credit to its customers covering the premiums of such policies would not be within the exemption set forth in the act.

IV. *Are plaintiff's charges in violation of the act?*

It is admitted in paragraph 7 of the stipulation of facts that:

"Clients who desire to purchase fire and casualty insurance on the installment plan are required to make an application and a credit report is drawn on them. If approved, charges for said insurance are based on the existing approved rates for said fire and casualty

policies on file with the Pennsylvania Department of Insurance, plus a charge for a credit report, plus a bookkeeping charge. In certain cases, plaintiff is charging, collecting, contracting for or receiving fees, charges or other considerations which aggregate in excess of six percent (6%) per year on the cost for such insurance as based on existing approved rates on file with the Pennsylvania Department of Insurance. In some of the aforesaid cases, the said cost of insurance to an individual client is less than $2,000.00. The cost of such insurance to the purchasers, together with such additional fees and charges that have been made, are paid to plaintiff in installments."

Section 3B of the Consumer Discount Company Act expressly prohibits a business corporation such as plaintiff from collecting "interest, discount, bonus, fees, fines, commissions, charges or other considerations which aggregate in excess of six percent (6%) per year on the amount actually loaned or advanced, or on the unpaid principal balances when the contract is payable by stated installments, without first obtaining a license from the Secretary of Banking." It appears from the admitted facts that plaintiff is actually receiving more than six percent per year on loans of $2,000 or less. In our opinion plaintiff's transactions herein complained of are in violation of the act of assembly. We think Professional Service Credit Association, Inc., v. O'Hara, supra; Medical Dental Business Service of New Jersey, Inc., v. Morrison, supra, are in accord with this conclusion.

In view of the foregoing, we make the following

### Conclusions of Law

1. Plaintiff's business practices constitute a violation of the Consumer Discount Company Act of April 8, 1937, P. L. 262, as amended, 7 PS §761-1 et seq.

2. Plaintiff's complaint in equity should be dismissed.

*Decree Nisi*

And now, November 17, 1958, it is ordered, adjudged and decreed that plaintiff's complaint in equity be and the same is hereby dismissed at the cost of plaintiff.

The prothonotary is directed to enter this decree nisi and notify the parties to this proceeding or their counsel forthwith. If no exceptions are filed within 20 days after the filing of this decree, it shall be entered as a final decree.