RALPH T. BORINO *vs.* WILLIAM LOUNSBURY ET AL., REGISTRARS OF VOTERS.

Third Judicial District, New Haven, January Term, 1913.
PRENTICE, THAYER, RORABACK, WHEELER and BENNETT, Js.

The Constitution of this State (Art. 6, § 3) provides that the privileges of an elector shall be forfeited by a conviction of bribery, forgery, perjury, duelling, fraudulent bankruptcy, theft, or other offense for which an infamous punishment is "inflicted." *Held* that the word "inflicted" referred to the punishment authorized or prescribed by law to which the accused, upon his conviction, stood in danger of being subjected, and not to the punishment which the trial court actually did impose in each particular case. Accordingly, one convicted of obtaining money by false pretenses, for which he might have been fined not more than $500, or imprisoned not more than three years, or both, forfeits his privileges as an elector, though he was in fact fined but $30.

Argued January 22d—decided April 17th, 1913.

WRIT OF MANDAMUS requiring the defendants, as registrars of voters, to restore the name of the plaintiff to the voting list of the town and city of Bridgeport, or to show cause to the contrary, returnable to and tried by the Superior Court in Fairfield County, *Holcomb, J.*,

upon a demurrer and motion to quash the alternative writ; the court sustained the demurrer and dismissed the writ, from which judgment the plaintiff appealed. *No error.*

*John P. Gray,* for the appellant (plaintiff).

*John S. Pullman,* for the appellees (defendants).

RORABACK, J. The application alleges that the relator, in 1905, was a resident and elector of the city of Bridgeport. In October of that year he was informed against by the prosecuting attorney of the City Court of Bridgeport, for obtaining money under false pretenses. Upon this information he was convicted, in the City Court of Bridgeport, and on appeal to the Criminal Court of Common Pleas in Fairfield County he pleaded guilty to the offense charged against him in the information, and was sentenced to pay a fine of $30, which he paid. Thereafter, the clerk of the Superior Court in Fairfield County, pursuant to his statutory duty, notified the selectmen of the town of Bridgeport that the relator had been convicted of a crime which worked a forfeiture of his civil rights. Thereupon the general registrars of voters of Bridgeport struck the name of the relator from the list of voters of Bridgeport, and have since refused, and still refuse, to reinstate the relator's name to the list. The relator thereby was deprived, and still is deprived, of his privileges as an elector, and brings the present application for a writ of mandamus to require the respondents to reinstate his name on the list of voters.

The respondents demurred to the writ and moved to quash the same, because: "From the allegations set forth in the writ it appears that the relator was legally convicted of the crime of obtaining money under false pretenses, for which crime Section 1415 of the General

Statutes of 1902 provides the infliction of the infamous punishment of three years' imprisonment, which imprisonment must by law be in the State's prison, and is an infamous punishment within the scope of Section 3 of Article 6 of the Constitution of the State of Connecticut, relating to the privileges of an elector being forfeited by conviction of an offense for which such an infamous punishment is inflicted." The court sustained the demurrer, and, upon the relator's refusing to plead over, granted the motion to quash.

The question presented is whether a person convicted of obtaining money under false pretenses, and sentenced to pay a fine of $30 and costs, forfeits his rights as an elector. A determination of the relator's rights involves the construction of the Constitution and statute laws of Connecticut.

Article Sixth, § 3, of the Constitution of this State, provides that "the privileges of an elector shall be forfeited by a conviction of bribery, forgery, perjury, duelling, fraudulent bankruptcy, theft, or other offence for which an infamous punishment is inflicted." The information to which the relator plead guilty was based upon § 1415 of the General Statutes, which reads as follows: "Every person who shall, by any false token, pretense, or device, obtain from another any valuable thing, or any leasehold interest, or the performance of any valuable service, with intent to defraud him or any other person; or who shall obtain from another person any valuable thing, or the performance of any valuable service, by means of delivering a check, order, or draft on a third party, purporting to be an order for the payment of money, when such person knows that the maker is not entitled to draw on the drawee for the sum specified, shall be fined not more than five hundred dollars, or imprisoned not more than three years, or both."

The relator contends that the phrase "is inflicted," in Article Sixth, § 3, of the Constitution, refers to the sentence pronounced by the court upon the particular offender, and not to the penalty attached to the offense by the legislature, so that disfranchisement follows conviction in the enumerated cases only when the punishment actually meted out by the court is infamous in its character. If the words have a doubtful meaning, or are susceptible of two meanings, they should receive that which will effectuate the intent of the framers of the Constitution and the general intent of the instrument. *People* v. *Fancher*, 50 N. Y. 288, 292. "Where its words are plain, clear, and determinate they require no interpretation; and it should, therefore, be admitted, if at all, with great caution, and only from necessity, either to escape some absurd consequence, or to guard against some fatal evil. . . . Contemporary construction is properly resorted to, to illustrate and confirm the text, to explain a doubtful phrase, or to expound an obscure clause. . . . It can never abrogate the text, . . . it can never narrow down its true limitations, it can never enlarge its natural boundaries." 1 Story on the Constitution (5th Ed.) §§ 405, 407; *State ex rel. Morris* v. *Wrightson*, 56 N. J. L. 126, 206, 28 Atl. 56, 22 L. R. A. 548, 558. "In construing any act of legislation, whether a statute enacted by the legislature, or a constitution established by the people as the supreme law of the land, regard is to be had, not only to all parts of the act itself, and of any former act of the same lawmaking power, . . . but also to the condition, and to the history, of the law as previously existing, and in the light of which the new act must be read and interpreted." *United States* v. *Wong Kim Ark*, 169 U. S. 649, 653, 18 Sup. Ct. Rep. 456, 42 L. Ed. 890, 892.

The laws of this State relating to crimes, before and at the time when our Constitution was framed

and adopted, may be properly referred to if they will throw any light upon the subject-matter of this inquiry. The Constitution of Connecticut was framed and adopted in 1818. At this time the compilation of the Statutes of 1808 was in force. The punishment for bribery under the Statutes of 1808, Title LV, chapter 1, §§ 12 and 13, pp. 246, 247, was a fine of $7, or $17, as the case might be. The crime of perjury (Statutes of 1808, p. 548) was punishable by a fine of $67 and imprisonment for six months. It is apparent that the framers of § 3 had in mind the statutory provisions in force relating to crimes and punishments. Several offenses were specifically enumerated which worked a forfeiture of the privileges of an elector irrespective of the penalty inflicted. If the sentence of the court were merely a fine, the conviction nevertheless operated as a forfeiture. Apparently § 3 was framed for a single purpose. This purpose was to give the legislature constitutional sanction for passing laws excluding those from the privileges of an elector who might thereafter be convicted, not only of any of the six offenses specifically enumerated, but of any other offense for which an infamous punishment is inflicted by the lawmaking power. This section of the Constitution was amended in 1875. It is of some importance to note that this amendment is in the following language: "The General Assembly shall have power, by a vote of two-thirds of the members of both branches, to restore the privileges of an elector to those who may have forfeited the same by a conviction of crime." Upon an examination of the Constitution and decisions of the different States in this country, we find no recognition of the principle contended for by the relator in the present case. The true test, universally applied in such cases, is whether the crime is one for which the statute authorizes the court to award an infamous punishment, and not

whether the punishment ultimately awarded is an infamous one. If the accused is in danger of being subjected to an infamous punishment, the crime is deemed to be infamous, although infamous punishment may not be actually inflicted. See *Ex parte Wilson*, 114 U. S. 417, 426, 5 Sup. Ct. Rep. 935, 939, 29 L. Ed. 89, 92; *In re Mills*, 135 U. S. 263, 267, 10 Sup. Ct. Rep. 762, 763, 34 L. Ed. 107, 109; *United States* v. *Johannesen*, 35 Fed. Rep. 411, 412 (citing *Mackin* v. *United States*, 117 U. S. 348, 6 Sup. Ct. Rep. 777, 29 L. Ed. 909); *Ex parte McClusky*, 40 Fed. Rep. 71, 72; *In re Claasen*, 140 U. S. 200, 204, 11 Sup. Ct. Rep. 735, 737, 35 L. Ed. 409, 411; *United States* v. *Watkinds*, 6 Fed. Rep. 152; *State* v. *Waller*, 43 Ark. 381; *State* v. *Smith*, 32 Me. 369, 54 Amer. Dec. 578; *Johnston* v. *State*, 7 Mo. 183; *People* v. *Van Steenburgh*, 1 Parker Cr. R. (N. Y.) 39.

An offense under the statute relating to false pretenses must be either a felony or a misdemeanor. If the relator's contention is correct, two persons might be convicted under the same statute for the same offense upon the same information; one might be sentenced to State prison and the other to pay a fine; one would be disfranchised and the other not. "The same acts cannot at the same time constitute a felony and a misdemeanor. They cannot coexist as the result of one and the same transaction. The crime must be one or the other, not both, or either." *State* v. *Waller*, 43 Ark. 381, 384. The word "inflicted" does not refer, directly or indirectly, to an infamous punishment inflicted by the court. The word "inflicted" is equivalent to the word "imposed," and may be understood to mean imposed or inflicted by the statute. See Webster New International Dictionary, also the Standard Dictionary. But the words of the Constitution should be given the meaning they were intended to bear when that instrument was framed and adopted. *Scott* v. *Sandford*,

60 U. S. (19 How.) 393, 426 (cited in *Jackson* v. *Steamboat Magnolia,* 61 U. S. (20 How.) 296, 334, 15 L. Ed. 909, 926); *State ex rel. Morris* v. *Wrightson,* 56 N. J. L. 126, 211, 28 Atl. 56, 22 L. R. A. 548, 559. It is stated in *Scott* v. *Sandford,* 60 U. S. (19 How.) 393, 426, 15 L. Ed. 691, 709, that "no one, we presume, supposes that any change in public opinion or feeling . . . should induce the court to give to the words of the Constitution a more liberal construction . . . than they were intended to bear when the instrument was framed and adopted. Such an argument would be altogether inadmissible in any tribunal called on to interpret it. If any of its provisions are deemed unjust, there is a mode prescribed in the instrument itself by which it may be amended; but while it remains unaltered, it must be construed now as it was understood at the time of its adoption. It is not only the same in words, but the same in meaning, and delegates the same powers to the government, and reserves and secures the same rights and privileges to the citizen; and as long as it continues to exist in its present form, it speaks not only in the same words, but with the same meaning and intent with which it spoke when it came from the hands of its framers, and was voted on and adopted by the people of the United States. Any other rule of construction would abrogate the judicial character of this court, and make it the mere reflex of the popular opinion or passion of the day." The common law is the system from which our judicial ideas and legal definitions are derived, and without which the language of the Constitution could not be understood. *Moore* v. *United States,* 91 U. S. 270, 274, 23 L. Ed. 346, 347; *United States* v. *Wong Kim Ark,* 169 U. S. 649, 654, 18 Sup. Ct. Rep. 456, 459, 42 L. Ed. 890, 893; *Schick* v. *United States,* 195 U. S. 65, 69, 24 Sup. Ct. Rep. 826, 827, 49 L. Ed. 99, 102; *Phipps* v. *Harding (Hudson Furniture*

*Co.* v. *Harding*), 70 Fed. Rep. 468, 476, 17 C. C. A.
203, 211, 30 L. R. A. 513, 518, 34 U. S. App. 148, 162;
*Rookey* v. *State*, 70 Conn. 104, 110, 38 Atl. 911. The
interpretation of the Constitution of the United States
is necessarily influenced by the fact that its provisions
are framed in the language of the English common law,
and are to be read in the light of its history. *Phipps* v.
*Harding* (*Hudson Furniture Co.* v. *Harding*), 70 Fed. Rep.
468, 476, 17 C. C. A. 203, 211, 30 L. R. A. 513, 518.
According to the phraseology of the common law, the
word "inflicted" was used in connection with its
application of punishment inflicted or imposed by the
legislature, or by law. Such a use of the word was
frequently made by Sir William Blackstone, whose
Commentaries on the Law of England were in common
use in this country at and before the time when our
Constitution was framed and adopted. He states that
"the statute law of England does therefore very seldom,
and the common law does never, inflict any punishment
extending to life or limb, unless upon the highest
necessity." 1 Blackstone's Commentaries (Cooley's
Ed.) * 133. Blackstone (in Book 4, Chap. 1) makes use
of the following expressions: "As to the *power* of human
punishment, or the right of the temporal legislator
to inflict discretionary penalties for crimes and mis-
demeanors." P. 7. "Which has occasioned some to
doubt how far a human legislature ought to inflict
capital punishments for *positive* offences." P. 9. "But
they are sometimes inflicted without such express war-
rant or example, at the will and discretion of the
human legislature; as for forgery, for theft, and some-
times for offences of a lighter kind." P. 9. "Every
humane legislator will be therefore extremely cautious
of establishing laws that inflict the penalty of death,
especially for slight offences, or such as are merely
positive." P. 10. "But it does not therefore follow

that it would be just for the legislature to inflict death upon every obstinate carrier, who defeats or eludes the provision of former statutes." P. 10. "When a question arises, whether death may be lawfully inflicted for this or that transgression, the wisdom of the laws must decide it." P. 11. "But it must be left to the arbitration of the legislature to inflict such penalties as are warranted by the laws of nature and society, and such as appear to be the best calculated to answer the end of precaution against future offences." P. 12. "Yet, though in this instance we may glory in the wisdom of the English law, we shall find it more difficult to justify the frequency of capital punishment to be found therein; inflicted (perhaps inattentively) by a multitude of successive independent statutes, upon crimes very different in their natures." P. 18.

In view of these considerations it is apparent that if it had been intended that it was the punishment actually inflicted by the court which should work the forfeiture of an elector's rights, the framers of our Constitution would have so expressly declared.

There is no error.

In this opinion the other judges concurred.