CHARLES E. LYMAN, JR. *v.* JOSEPH A. ADORNO, TREASURER OF THE STATE OF CONNECTICUT

MALTBIE, C.J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued April 2—decided April 10, 1947

*William L. Beers* and *Paul W. Adams,* for the plaintiff.

*Bernard A. Kosicki,* assistant attorney general, with whom, on the brief, was *William L. Hadden,* attorney general, for the defendant.

*William J. Galvin, Jr.,* amicus curiae.

MALTBIE, C. J. This action seeks a declaratory judgment as to the constitutionality of an act recently passed by the General Assembly granting a so-called "bonus" to veterans of the late war. In brief, the act makes a grant of money to each man or woman who at the time he or she entered the armed service of the nation had been domiciled in this state for at least one year, who had served for at least ninety days between December 7, 1941, and December 3, 1945, and who had not been dishonorably discharged; the amount to be paid is $10 for each month or major part thereof during which he or she was in active service, the total of the grant to any person not to exceed $300; the act appropriates $50,000,000 to carry out its provisions; and it authorizes the issuance of bonds not exceeding that amount to provide the necessary funds.

We should point out at the beginning of our discussion that we are not concerned with the question whether this legislation is wise, economically or

514

otherwise; that is a matter for legislative determination. *Trustees of Bishop's Fund* v. *Rider,* 13 Conn. 87, 103; *Beach* v. *Bradstreet,* 85 Conn. 344, 350, 82 A. 1030; *State* v. *Darazzo,* 97 Conn. 728, 732, 118 A. 81; *State* v. *Bassett,* 100 Conn. 430, 432, 123 A. 842. "The legislature is the arbiter of public policy." *State* v. *Gilletto,* 98 Conn. 702, 714, 120 A. 567. Nor can the magnitude of the sum involved enter into our consideration; the same issue of constitutionality would be presented if only a relatively small amount of the public funds of the state would be necessary to meet the requirements of the act. If the General Assembly has transgressed no limitation expressly or impliedly contained in the constitution, the responsibility for the use of public funds for the purpose specified in the act rests wholly upon it. *State ex rel. Brush* v. *Sixth Taxing District,* 104 Conn. 192, 198, 132 A. 561.

Moreover, a proper regard for the very limited authority of the judicial department to interfere with the determination by the General Assembly as to those provisions of law which will serve to further the welfare of the citizens of this state requires that we make every intendment in favor of the validity of the act, and we can hold it unconstitutional only if there is no reasonable ground upon which it can be sustained. "It is our duty to approach the question with great caution, examine it with infinite care, make every presumption and intendment in its favor, and sustain the Act unless its invalidity is, in our judgment, beyond reasonable doubt." *Beach* v. *Bradstreet,* supra, 349; *State* v. *Bassett,* supra, 433. On the other hand, we are bound not to permit our judgment to be swayed by the deep feeling of gratitude which we, as well as the other citizens of this

state, entertain for those men and women who served so spendidly and made such sacrifices in the late war for the protection of our country and the people of this state and nation.

The plaintiff relies largely upon the provision of § 1 of article first of our constitution which states that "no man, or set of men are entitled to exclusive public emoluments or privileges from the community." In *State ex rel. Brush* v. *Sixth Taxing District,* supra, 195, we pointed out that this provision has a like meaning to that in the fourteenth amendment to the constitution of the United States which prohibits the states from denying to any person the equal protection of the laws. See *State* v. *Conlon,* 65 Conn. 478, 488, 33 A. 519; *New Haven Metal & Heating Supply Co.,* v. *Danaher,* 128 Conn. 213, 219, 21 A.2d 383. The contention of the plaintiff in reality is that public funds shall not be granted to any individual or individuals where they would clearly serve only private gain or advantage. It is a fundamental principle of American democracy that this cannot be done. *Brodhead* v. *Milwaukee,* 19 Wis. 624, 652; *Bush* v. *Board of Supervisors,* 159 N.Y. 212, 216, 53 N.E. 1121; *Opinion of the Justices,* 175 Mass. 599, 600, 57 N.E. 675; 2 Cooley, Constitutional Limitations (8th Ed.) p. 1033. It was upon this principle that in *Beach* v. *Bradstreet,* supra, we held unconstitutional an act of the General Assembly making grants of public money to certain veterans of the Civil War, a decision to which we shall refer later at some length. The broad provision in § 1 of article third of our constitution which vests the legislative power in the General Assembly is subject to the limitation that an act which serves no other purpose than individual gain or profit goes beyond the power of that body to enact

and is necessarily void. See *Tyson* v. *School Directors of Halifax,* 51 Pa. 9, 22.

That is not to say that, if an act serves a proper public purpose, the fact that it incidentally confers a direct benefit upon some individual or individuals renders it invalid. *Allydonn Realty Corporation* v. *Holyoke Housing Authority,* 304 Mass. 288, 292, 23 N.E.2d 665; 3 Willoughby, Constitution of the United States, § 1150. The exemption of individuals from the burden of taxation stands on a ground similar to that of an appropriation of public funds. See *Corbin* v. *Baldwin,* 92 Conn. 99, 101 A. 834. A good illustration of private gain under a law sustained by us as constitutional because it served a legitimate public purpose is afforded by the case of *Baker* v. *West Hartford,* 89 Conn. 394, 94 A. 283, where we upheld the granting of an exemption from taxation for a limited period of time of lands which were planted with forest trees in accordance with certain stated requirements. Among other instances which might be cited is the almost immemorial exemption of educational institutions from taxation including private schools which meet certain requirements and universities such as Yale, Wesleyan, Trinity and Harvard; while the direct benefit from the existence of these institutions is conferred upon those who are students within them, the basis of the exemption is the great, indeed essential, service which education performs in a government such as ours. *Blodgett* v. *Bridgeport City Trust Co.,* 115 Conn. 127, 135, 161 A. 83; *Stamford Jewish Center, Inc.* v. *Stamford,* 117 Conn. 379, 383, 168 A. 5; *Masonic Building Assn.* v. *Stamford,* 119 Conn. 53, 61, 174 A. 301. It should also be remembered that the public purposes which justify expendi-

tures of public funds go far beyond the relief of the needy. The exemption of educational institutions and of property devoted to the furtherance of religion is sufficient illustration of that fact. If the expenditure of public funds will promote the welfare of the community, it is for a public purpose. *Beach* v. *Bradstreet,* supra, 350.

The act before us begins with a section in which is recited the circumstances under which men and women were inducted into the armed forces of the United States; it briefly summarizes the honorable and courageous nature of their services; and it states that these services have resulted in preserving to all the people of this country "the heritage of our institutions and ideals and the peaceful continuation of our government." While legislative findings of fact are persuasive, the question whether an expenditure of public money is for a public purpose is a subject of judicial inquiry, and they are not controlling upon the courts when required to determine such a question; *Opinion of the Justices,* 320 Mass. 773, 67 N.E.2d 588, 592; but the statement of the Supreme Judicial Court of Massachusetts in *Allydonn Realty Corporation* v. *Holyoke Housing Authority,* supra, 294, is applicable to the situation before us: "In any event we should be blind to the obvious, if we did not know that they are true." The act goes on to state: "Public interest and welfare will be wisely served by due and prompt recognition of an obligation of the state of Connecticut to those persons who served with credit in the armed forces during the period of world war II, in the form of money payments as provided herein; by such payments will be manifested a public will to incite patriotism, promote devotion to state and country,

and encourage a readiness to sacrifice life, health and treasure for the common good; and such payments will be for the direct benefit of all the people of this state, will stimulate and strengthen the support of our government and will directly promote the welfare of the people of the state in equal measure." We must accord to the General Assembly as a co-ordinate branch of our government the utmost confidence that it has made this statement of the purpose of the act honestly and in good faith. *Allyn's Appeal,* 81 Conn. 534, 537, 71 A. 794; *Opinion of the Justices,* 211 Mass. 608, 611, 98 N.E. 338. Nor is it necessary to argue that that purpose falls fully within the field of the promotion of the public welfare of the people of this state. See Judson, Taxation (2d Ed.) § 386. Indeed, in such a government as ours, nothing more basically serves the good of the people as a whole than loyalty and devotion to their government and a willingness to make sacrifices for its preservation, even to the uttermost, life itself. The only ground upon which we could hold the law unconstitutional would be that the means adopted by the General Assembly to serve the intended purpose is in itself invalid.

Upon that issue we cannot set up our judgment against that of the legislature unless its action is so clearly unreasonable that there is no room for disagreement. *State* v. *Hillman,* 110 Conn. 92, 106, 147 A. 294; *Shelton* v. *City of Shelton,* 111 Conn. 433, 437, 150 A. 811. The General Assembly may well have believed that recognition and appreciation of fine service already performed are an encouragement to like services in the future and that tangible evidence of that appreciation by a grant of money gives to it greater weight. Whatever may be our

own convictions in that regard, we cannot say that such a basis for the grants made in the act before us is so beyond the realm of reason that we can hold the law unconstitutional as purely a gift of public funds to the individuals who will benefit from it.

It is true that it is the function of the federal government and not of the states to carry on war, and that the men and women to whom the act applies were in the service of the United States, not of this state. But it is only by the loyal and patriotic service of the citizens of the various states that the United States can carry on a war. Such service no less protects this state and its people because it is rendered under the federal government. Loyalty and patriotism have their place in peace as well as in war; but, that aside, these men and women were serving no alien cause. To hold that, because the federal and state governments are distinct agencies, though of one people, a state may not, by a grant to its citizens, encourage in them loyalty and patriotism is to give more effect to that distinction than the realities of the situation justify. How closely the interests of the state and nation are knit together in time of war is illustrated by the position of the Connecticut National Guard. In the revised statutes of this state adopted in 1821, the chapter on militia, after reciting at length an act of the Congress, passed May 8, 1792, and amended May 12, 1820, which made provision for a "uniform militia throughout the United States," proceeded to provide for the establishment of the organization now known as the Connecticut National Guard. Statutes, Rev. 1821, p. 328. This force has been at all times subject to be called in defense of the United States and at the beginning of the late war was referred to by

the Congress as "an integral part of the first-line defenses of this Nation;" 54 Stat. 885, Chap. 720, § 1(c); 50 U.S.C. App. § 301(c) (1940). It may be called upon for service within the state in case of "civil commotion"; General Statutes § 772; but its great duty is to serve in defense of the nation, as it so splendidly exemplified in the late war. Yet the General Assembly from the time of its establishment has appropriated money for its maintenance, amounting in the present biennium to nearly half a million dollars a year, as well as incurred heavy expenditures in providing armories for it.

That some other states have not seen fit to make similar grants to veterans is no reason why the General Assembly of this state may not do so; it is a part of the proud history of this state that on occasions in the past it has rendered more than its fair share of service in upholding and protecting the cause of the people of this country. That some other states have not made similar grants, that those who entered the armed forces of the nation from this state served no more creditably than did those from other states, and that all the men and women in that service, no matter where they resided, joined in a single cause are considerations proper to have been addressed to the General Assembly; they afford no ground on which we can hold the law unconstitutional.

The provision of § 1 of article first of the constitution that "no man, or set of men are entitled to exclusive public emoluments or privileges from the community," like the provision in the fourteenth amendment of the constitution of the United States that no state shall "deny to any person within its jurisdiction the equal protection of the laws," has never been held to prevent the legislature from deal-

ing differently with different classes of persons provided there is "some natural and substantial difference germane to the subject and purposes of the legislation between those within the class included and those whom it leaves untouched." *State* v. *Cullum,* 110 Conn. 291, 295, 147 A. 804; *Francis* v. *Fitzpatrick,* 129 Conn. 619, 623, 30 A.2d 552; *Murphy, Inc.* v. *Westport,* 131 Conn. 292, 302, 40 A.2d 177. In the case before us, not only do those who served in the armed forces of the nation occupy in the community a different status than do other citizens but grants to them are of the very essence of the purpose the General Assembly is seeking to accomplish. It is not open to question that the fact that the payments provided by the act are to be made only to veterans of the war does not establish an invalid classification. *Norwich Gas & Electric Co.* v. *Norwich,* 76 Conn. 565, 572, 57 A. 746; *New York, N. H. & H. R. Co.* v. *Offield,* 77 Conn. 417, 422, 59 A. 510. Nor does the fact that the act applies only to those in the armed forces who at the time they entered the service had been domiciled in this state for at least one year next preceding have that effect. We may take judicial notice of the fact that during the late war there was a great influx of industrial workers into this state, many of whom presumably intended to reside here only temporarily. The defendant states that it was to avoid bringing such persons within the scope of the law that the restriction as to domicil was inserted in the act. We see no reason to question that contention; and it affords sufficient ground to support as a valid classification the limitation of the benefits of the act to those who had resided here at least one year prior to entering the service.

It is true that to include in the act such persons

and to exclude those who were domiciled here for a less period even by a few days may result in denying the grants to persons who are as deserving as any within the class to whom they are made. Such results often follow from the necessities of the definition of a class. When we were considering the statute restricting the hours of employment of women in certain types of businesses, we were met with the claim that there was little actual justification for the law in the case of the employment of the particular person involved; we pointed out that legislation of that nature must necessarily be in general terms; and we said: "That a law, general in its application, has little justification as regards certain individuals within its scope and imposes upon them peculiar hardships, is not a basis for holding it invalid if it applies equally to all within the classification and as a general rule substantially promotes public health, morals or the general welfare." *Doncourt* v. *Danaher,* 126 Conn. 678, 685, 13 A.2d 868. In support of that conclusion, we cited *Dominion Hotel, Inc.* v. *Arizona,* 249 U.S. 265, 269, 39 S. Ct. 273, 63 L. Ed. 597, in which the court was considering a similar restriction as regards women employed in hotels, and it said: "If in its theory the distinction is justifiable, as for all that we know it is, the fact that some cases, including the plaintiff's, are very near to the line makes it none the worse. That is the inevitable result of drawing a line where the distinctions are distinctions of degree; and the constant business of the law is to draw such lines." We have upheld our Tenement House Act against the claim of unjust discrimination based on the fact that it applies only to buildings accommodating three or more families; *Second National Bank* v. *Loftus,* 121 Conn. 454, 460,

185 A. 423; and the Supreme Court of the United States has upheld as a not unreasonable or arbitrary classification the restriction of the benefits of a workmen's compensation law to employees of those who employ five or more. *Jeffrey Mfg. Co.* v. *Blagg,* 235 U.S. 571, 577, 35 S. Ct. 167, 59 L. Ed. 364; see also *Tanner* v. *Little,* 240 U.S. 369, 382, 36 S. Ct. 379, 60 L. Ed. 691. The General Assembly evidently considered that its purpose to limit the grants to veterans who were more than temporary residents of the state could best and most fairly be accomplished by the requirement that the act should only apply to those who had been domiciled here one year or more before entering service. We cannot hold that it acted arbitrarily or unreasonably in fixing that length of domicil as the boundary of the class of those who would come within the purview of the statute.

Thus far we have discussed the question from the standpoint of principle, as indeed the case was largely argued before us, and, from that standpoint, if we give due regard to the established limitations upon the power of the courts of this state to declare a law unconstitutional, we find no sound ground for so holding. The question is not, however, one of first impression in this state. In 1863, during the Civil War, the town of Woodbury made an appropriation of a sum of money to be dispensed for the purpose of enabling men drafted into the army to procure substitutes, but, if they could not do so, the money was to be paid to the drafted men themselves, not exceeding $300 to each. Subsequently, the General Assembly enacted a statute reciting that such action had been taken in certain towns of the state and providing that the selectmen of any such town should call a special town meeting at which the pre-

vious action might be confirmed; and the vote of the town of Woodbury was confirmed at such a meeting. The question of the validity of the vote came before this court in *Booth* v. *Woodbury*, 32 Conn. 118. It was assailed upon some of the same grounds which are now claimed to invalidate the act before us. By a unanimous opinion we held the vote valid. The question is stated in our opinion (p. 127) as follows: ". . . could the people as a whole, if they had retained the whole legislative power, by a major vote, tax A and B and the rest, to give a gratuity to C and D, because C and D were drafted by the United States; and if an infringement of the principles of natural justice, is it such an infringement that it is our duty to hold the law inoperative"? We answered, "Very clearly such a vote would not be such an infringement," and stated the reasons for that conclusion. Those reasons we quote somewhat at length: "In the first place, if it be conceded that it is not competent for the legislative power to make a gift of the common property, or of a sum of money to be raised by taxation, where no possible public benefit, direct or indirect, can be derived therefrom, such exercise of the legislative power must be of an extraordinary character to justify the interference of the judiciary; and this is not that case. Second, if there be the least possibility that making the gift will be promotive in any degree of the public welfare, it becomes a question of policy and not of natural justice; and the determination of the legislature is conclusive. And such is this case. Such gifts to unfortunate classes of society, as the indigent blind, the deaf and dumb, or insane, or grants to particular colleges or schools, or grants of pensions, swords or other mementoes for past services, involving the

general good indirectly and in slight degree, are frequently made and never questioned. Third, the government of the United States was constituted by the people of the state, although acting in concert with the people of other states, and the general good of the people of this state is involved in the mainte-nance of that general government. In many conceiv-able ways the action of the town of Woodbury might not only mitigate the burdens imposed upon a class but render the service of that class more efficient to the general government, and therefore it must be presumed that the legislature found that the public good was in fact thereby promoted. And fourth, it is obviously possible, and therefore to be intended, that the General Assembly found a clear equity to justify their action."

This case was followed in *Waldo* v. *Portland,* 33 Conn. 363, 370; *Bartholomew* v. *Harwinton,* 33 Conn. 408, 410; *Potter* v. *Canaan,* 37 Conn. 222; and *Stuart* v. *Warren,* 37 Conn. 225. The payments under con-sideration in these cases were all to be made substan-tially at the time the recipient was drafted and dur-ing the course of the war; but, while the draft law of that day permitted a man summoned to provide a substitute, he was, unless he did that, compelled to serve; the payment to such men could not be regard-ed as an inducement to them to enter the army; and in upholding the payments in *Booth* v. *Woodbury,* supra, we did not proceed upon that ground.

In *Beach* v. *Bradstreet,* 85 Conn. 344, 82 A. 1030, we had before us the question of the constitutionality of an act of the General Assembly passed in 1911 which provided an annual payment of $30 to be made to every resident of the state who had served in the armed forces of the United States during the Civil

War and been honorably discharged, or to their widows, fathers or mothers. In holding the law unconstitutional, we said (p. 356): "Whether or not Connecticut could bestow an annual gratuity as a reward for services rendered fifty years ago in the Civil War to all—both the drafted and the volunteer —who served to her credit in the army and navy of the United States, without regard to disability, necessity, age, length of service, or exceptional service, we do not determine. The case does not require it. The justification for such legislation, if found at all, must be in its public purpose, and that in its incitement to patriotism." We pointed out that the law inseparably applied to veterans who had not served as a part of the quota from this state but may have gone into the service from another state or even been aliens; and we stated, as the basis of our decision: "The taxation of Connecticut people for some internal improvement in Kansas would universally be recognized as outside the scope of legitimate legislative power. In principle there is no difference between a tax levied for such an object and one to reward the soldiers and sailors who helped make up the quota of Kansas in the Civil War. Her soldiers and sailors served under the Constitution to which she owed allegiance, but they served to the credit of Kansas, and for her, as much as though they had fought under her own enlistment to repel an invader on her own soil. Connecticut's interest in such service was indirect, and identical with that resulting from the services of the quotas of every other State. That the soldiers and sailors who filled the quotas of other States must reside in this State to secure 'state aid' does not change the situation. A State's bounty must be limited to her own soldiers and sailors.

Service to the credit of other States is not service for her." ·

The act before us comes fairly within the limitation prescribed in that case. Under the Selective Service Act, quotas of men to be drafted were determined for each state; the number of men who were residents of any quota area and who at the time the quotas were determined were already in service was deducted; and men resident in such an area who were thereafter inducted were credited to the quota. 54 Stat. 887, § 4(b); 50 U.S.C. App. § 304b (1940). While there were no established quotas for women who joined the armed forces and they volunteered, the requirement in the act that they must have been domiciled in this state for at least one year before entering the service sufficiently removes the grants to them from the type of payments held invalid in *Beach* v. *Bradstreet,* supra. Our precedent decisions support rather than militate against the conclusion we have reached in this case.

If we turn to other jurisdictions, we find that the great weight of authority sustains statutes similar to the one before us and there is much support for the reasoning we have adopted. In Massachusetts, the case of *Mead* v. *Acton,* 139 Mass. 341, 1 N.E. 413, would throw serious doubt upon the validity of such legislation, but later opinions of the Supreme Judicial Court in that state have expressly held it valid. *Opinion of the Justices,* 211 Mass. 608, 610, 98 N.E. 338; *Opinion of the Justices,* 320 Mass. 773, 67 N.E.2d 588, 593. In *People* v. *Westchester County National Bank,* 231 N.Y. 465, 132 N.E. 241, a statute providing for grants to veterans was held invalid by a majority of the court; the decision rested upon two clauses in the New York constitution which provided that

neither the credit nor the money of the state should be given or loaned to or in aid of any individual or private undertaking; and the opinion makes it plain (p. 471) that had it not been for this limitation the statute in question would have been valid. Judge Cardozo, then a member of the court, filed a strong dissenting opinion in which he placed the validity of the legislation upon the ground that the state, though not under a legal obligation to the veterans of the war, might recognize a moral duty having its basis in equity and honor. In passing we note that we have said that a state may recognize a merely honorary obligation; *Norwich Gas & Electric Co.* v. *Norwich,* 76 Conn. 565, 572, 57 A. 746; but we do not need to rest our decision upon that ground and the bounds of the power are so indefinite that we prefer not to do so. Other decisions in which legislation similar to that before us has been upheld are: *Veterans' Welfare Board* v. *Riley,* 188 Cal. 607, 610, 208 P. 678; *Cass Township* v. *Dillon,* 16 Ohio St. 38, 40; *Gustafson* v. *Rhinow,* 144 Minn. 415, 419, 175 N.W. 903; *Grout* v. *Kendall,* 195 Iowa 467, 477, 192 N.W. 529; *State ex rel. Griffith* v. *Davis,* 113 Kan. 4, 213 P. 171; *State ex rel. Atwood* v. *Johnson,* 170 Wis. 218, 230, 175 N.W. 589; *State ex rel. Hart* v. *Clausen,* 113 Wash. 570, 194 P. 793; *Brumley* v. *Baxter,* 225 N.C. 691, 696, 36 S.E.2d 281; *State ex rel. Morris* v. *Handlin,* 38 S.D. 550, 557, 162 N.W. 379. An interesting case is that of *Bosworth* v. *Harp,* 154 Ky. 559, 157 S.W. 1084, where a statute granting pensions to confederate soldiers was sustained. Other cases not directly in point but the reasoning in which tends to support our conclusion are: *State, Ruckman* v. *Demarest,* 32 N.J.L. 528, 539; *Strauss* v. *Bradley Beach,* 117 N.J.L. 45, 46, 186 A. 681, aff'd

118 N.J.L. 561, 194 A. 160; *Speer* v. *School Directors,* 50 Pa. 150, 159; *Taylor* v. *Thompson,* 42 Ill. 1, 13; *Allied Architects' Assn.* v. *Payne,* 192 Cal. 431, 434, 221 P. 209. In *State ex rel. Mills* v. *Dixon,* 66 Mont. 76, 213 P. 227, a statute similar to ours was held invalid under a provision in the constitution of that state like the one before the New York court in *People* v. *Westchester County National Bank,* supra; the court specifically held that the state owed no legal obligation to those who had served in the armed forces of the United States, and no moral obligation which it could recognize, differentiating the functions of the federal and state governments in the prosecution of the war; but we have no such constitutional provision as that relied upon in the decision, and, for the reasons we have given, we cannot agree that those men and women who served in the armed forces of the United States were not thereby protecting the interests of this state and its people.

The plaintiff points to a number of provisions in the act which he claims make it indefinite, inconsistent and unworkable. Some of these objections involve its interpretation, but for that purpose the courts are always open, if it proves necessary to resort to them. The authorization to the state treasurer to adopt rules for the ascertainment of beneficiaries and the amounts to which they are entitled and to establish methods and procedures to make the act effective involves no discretion on his part but is purely administrative. These and other specific provisions in the act to which the plaintiff refers as defects do not go to the validity of the act. An unconstitutional statute cannot be sustained because in its administration no rights will be invaded; *State* v. *Coleman,* 96 Conn. 190, 196, 113 A. 385; and by the

same token a statute not violative of the constitution cannot be held invalid because in its administration state officials may encounter difficulties or commit wrongs.

The sole question propounded in the reservation asks whether the act violates § 1 of article first of the constitution. Our discussion has gone somewhat beyond the needs of an answer to that specific inquiry. We, therefore, advise the Superior Court that the act is constitutional.

No costs will be taxed in this court to either party.

In this opinion the other judges concurred.