WALTER W. WALSH, TAX COMMISSIONER *v.* ALDRO
JENKS, ASSESSOR OF THE CITY OF WATERBURY

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued October 15—decided November 23, 1948

*Frank W. Flood,* assistant attorney general, with whom, on the brief, was *William L. Hadden,* attorney general, for the plaintiff.

*Philip N. Bernstein,* with whom was *George J. Crocicchia,* for the defendant.

MALTBIE, C. J.  This reservation, presented upon facts alleged and admitted in the pleadings, raises issues as to the interpretation and validity of certain statutes granting limited exemptions from the property tax to those who are or have been in the armed service of the United States or to their dependents.  The plaintiff tax commissioner claims that these statutes are to be interpreted as restricted to those who are serving or have served as a portion of the quota assigned to this state.  The best approach to the issue so raised is to give a history of tax exemptions of this

nature which the General Assembly has from time to time granted.

The first act was passed in 1871. It exempted to the amount of $1000 the property of soldiers and sailors who served in the army or navy of the United States "in the war of the rebellion, . . . who enlisted from and were credited on the quota of this state," and who were receiving a pension from the United States, and the property of the widows and mothers of such soldiers and sailors who were receiving a like pension. Public Acts, 1871, Chap. 126. In 1872 the exemption was extended to include the pensioned widows and mothers of soldiers and sailors who served in the army or navy of the United States in wars previous to "the war of the rebellion." Public Acts, 1872, Chap. 105, § 1. In 1879 the exemption was granted to pensioned soldiers and sailors who served during the latter war and were credited on the quotas of other states but who had been residents of this state for five years. Public Acts, 1879, Chap. 23. In 1880 the exemption was extended to "all pensioned soldiers and sailors who have served in the army or navy of the United States." Public Acts, 1880, Chap. 48. In 1881 a law was passed giving to all pensioned soldiers and sailors of the United States who lost a leg or arm, or suffered similar disabilities, the same exemption as that allowed blind persons; Public Acts, 1881, Chap. 85; the next year the amount of their exemption was stated to be $3000. Public Acts, 1882, Chap. 85. In 1884 the law of 1880 was amended to make it apply to "all pensioned soldiers and sailors resident in this state." Public Acts, 1884, Chap. 84. In 1885 an exemption of $1000 was granted to the pensioned widows and mothers, resident in this state, of soldiers and sailors. Public Acts, 1885, Chap. 32.

The Revision of 1875 had incorporated the act of

1871, with its limitation to soldiers and sailors who enlisted from and were credited to the quota of this state; Rev. 1875, p. 154, § 12; later acts had in effect done away with this requirement; but in 1886 the General Assembly passed an act apparently intended to codify the statutes and clear up any doubt as to the limitation. The first section exempted to the amount of $1000 the property of "residents of this state" who had served in the army or navy of the United States and had been honorably discharged, and the property of "resident widows or widowed mothers" of such soldiers and sailors and of pensioned widows and mothers; and the second section expressly repealed the portion of the Revision of 1875 containing the limitation as to those who had enlisted from and were credited to the quota of this state. Public Acts, 1886, Chap. 137. It would serve no purpose to refer in detail to a long series of amendments to the statute thereafter made. Its provisions were divided into separate statutes or subdivisions of statutes, and the enumeration of wars or warlike activities in which soldiers and sailors of the United States had served was much broadened; but none of the statutes made it a condition of the exemption that the recipient should have been one who was credited to the quota of this state, and all applied to "residents of this state" who fulfilled the specified requirements. The most far-reaching statute granting exemptions to veterans took its final form in an amendment to subsection (19) of § 1163, and is § 158f of the 1941 Supplement to the General Statutes, a copy of which is given in the footnote.[1]

---

[1] Sec. 158f. VETERANS. Subject to the provisions of sections 1166 and 1171, property to the amount of one thousand dollars belonging to, or held in trust for, any resident of this state who has served in the army, navy, marine corps or coast guard of the United

The reservation is broad in its scope and questions the application of a considerable number of the statutes on the ground that they do not include any limitation as regards service by persons who enlisted from or formed a portion of the quota of this state. Thus § 1163 of the General Statutes, subsections (18), (20) and (23), provides limited exemptions for residents of this state who have served or are serving in the army, navy, marine corps or coast guard and who are receiving pensions from the federal government; for widows, residents of this state, of persons who so served; and for pensioned fathers or mothers, residents of this state, of those who so served. Section 258g, Sup. 1943, grants a limited exemption to "any resident of this state" who has served or is serving in the armed forces of the United States and has a disability rating by the veterans administration of the United States. Section 260g provides a limited exemption for any person who is serving in those forces; § 259g makes the provisions of the latter section applicable to persons serving in the merchant marine of the United States or any women's auxiliary organized under an act of the Congress and affiliated with any branch of the armed services; but by § 268g and § 286i, Sup. 1947,

States in time of war, or during the Philippine insurrection, China relief expedition, Mexican expedition or Nicaraguan expedition, and received an honorable discharge therefrom, any veteran of any of said wars or campaigns, who is still in the service and by reason of continuous service has not as yet received a discharge, or who, being a veteran of any war or of the Philippine insurrection, the China relief expedition, Mexican expedition or Nicaraguan expedition, retired from the army, navy, marine corps or coast guard service after thirty years of service on account of having reached the age limit prescribed .by law or from mental or physical disability, or who is serving in the army, navy, marine corps or coast guard of the United States in time of war; or lacking said amount of property in his own name, so much of the property belonging to, or held in trust for, his wife as shall be necessary to equal said amount.

the right to these exemptions terminated on December 31, 1947, except that exemptions to persons who were on the permanent list of those entitled to them are continued so long as the recipients remain residents of the town where their exemptions are recorded. Another statute grants a limited exemption as regards the property of "any resident or non-resident of this state" who is in the armed services of the United States and has been detailed to give instruction to the Connecticut national guard. Cum. Sup. 1935, § 370c. There is a statute which grants a limited exemption to "any resident of this state" who has enrolled in the United States maritime service for at least ninety days during the second world war; Sup. 1945, § 276h; but that statute ceases to be effective after December 31, 1948. Sup. 1945, § 280h; Sup. 1947, § 286i. Still another statute exempts to a limited extent the property of any person "who is a citizen of the United States," was "during the world war" in the military or naval service of a government allied or associated with that of the United States, was "a resident of the United States" at the time of his enlistment or enrolment, and whose certificate of honorable discharge has been recorded by the town clerk of the town where he resides. Cum. Sup. 1935, § 371c.

One of the questions propounded in the reservation asks whether, if it should be decided that under these statutes the exemptions could not properly be granted to persons not residents of this state at the time of their enlistment or induction, the defendant or the municipality concerned, through its proper officers, should recover from any such persons to whom exemptions have been given the amount of taxes which they should have paid. To any action to decide that question the persons who have received exemptions would be necessary parties, and in their absence we could not

properly answer it. *Brennan* v. *Russell,* 133 Conn. 442, 445, 52 A. 2d 308. We are concerned only with the statutes applicable to the tax assessments now being made or which shall be made in the future.

We shall first consider § 158f. The fact that the statute in which it originated was restricted to persons credited to the service quota of this state, that it was shortly amended to include those who had resided in this state for five years though they were a part of the quota of another state, that thereafter statutes were passed applicable generally to residents of this state, that the limitation to persons credited to the quota of this state as it appeared in the Revision of 1875 was expressly repealed, and that in the same statute, and since, the exemption has been granted to any resident of this state who meets the further conditions specified, leaves no doubt that it was not the legislative intent in § 158f to restrict the grant to persons who served as a part of the quota from this state. We point out also that there is nothing in the terms of the statute which suggests any such limitation and, aside from the considerations we have stated, we could not read such a provision into it. *Forman Schools, Inc.* v. *Litchfield,* 134 Conn. 1, 8, 54 A. 2d 710; *Borino* v. *Lounsbury,* 86 Conn. 622, 625, 86 A. 597; *Washburn* v. *LaMay,* 116 Conn. 576, 578, 165 A. 791; *State* v. *Nelson,* 126 Conn. 412, 416, 11 A. 2d 856; *McManus* v. *Jarvis,* 128 Conn. 707, 711, 22 A. 2d 857.

The plaintiff tax commissioner has confined his argument before us to the claim that the statutes should be interpreted as not applicable to persons who did not form a portion of the quota of this state, and has made no claim that, if such persons are included, the statute is unconstitutional. In the questions propounded we are asked whether, if the statutes are not so limited, exemptions can properly be granted to persons not

domiciled in this state at the time of their enlistment or induction, and whether the constitution prohibits exemptions to such persons. The defendant's position is that a grant to them may be made. We cannot, however, regard the statutes as severable so that, if an exemption cannot properly be granted to persons not resident in Connecticut at the time of their enlistment or induction into service, they may be sustained as regards persons so domiciled. "It is an established principle that a statute may be invalid as to some of its parts and good as to others, and that the unconstitutionality of one part will not invalidate another part, unless the two are so mutually connected and dependent as to warrant a belief that the legislature intended them to stand or fall together as a whole." *Branch v. Lewerenz,* 75 Conn. 319, 324, 53 A. 658. In the case before us the terms of the statute permit of themselves no severance, but it would have to be made between groups of individuals both of which fall within the broad language of the law. In *Beach v. Bradstreet,* 85 Conn. 344, 82 A. 1030, we had before us a law which provided for annual payments as "state aid" to "every person resident in this state" who had served in the armed forces of the United States during the civil war. We held that the state could not under the constitution make such payments to persons who had served as a part of the quota of other states or as aliens, that (p. 356) such aid to those who had so served was inseparably connected with aid to those who had served as a part of the quota of this state, and that the whole statute was invalid. See also *McLaughlin v. Poucher,* 127 Conn. 441, 446, 17 A. 2d 767; *State v. Kievman,* 116 Conn. 458, 471, 165 A. 601. If the exemptions in the statutes before us may not constitutionally be granted to persons who did not render services as a

part of the quota of this state, the whole statute must be held invalid.

We must then meet the question whether this state can grant exemptions from the property tax to persons residing in this state who served or are serving in the armed forces of the United States but who did not enter those forces by enlistment or by induction into them as a part of a quota assigned to this state. In *Beach* v. *Bradstreet,* supra, as we have stated, we held unconstitutional a grant of an annual payment as "state aid" to every person resident in this state who served in the armed forces of the United States during the civil war and was honorably discharged, to the widow or widowed mother of any such person who had so served, and to the pensioned widows, fathers and mothers, resident in this state, of such persons. We said (p. 351): "The test of the Act before us is: Will it serve a recognized object of government, and will it directly promote the welfare of the people of the State in equal measure?" We pointed out that under the broad terms of the statute persons would be entitled to the payments provided though they had served as a part of the quota of other states or as aliens. We stated the principal reason for holding the law invalid as follows (p. 357): "The purposes of taxation must be kept within the range of subjects which bring to the State a direct benefit. The taxation of Connecticut people for some internal improvement in Kansas would universally be recognized as outside the scope of legitimate legislative power. In principle there is no difference between a tax levied for such an object and one to reward the soldiers and sailors who helped make up the quota of Kansas in the Civil War. Her soldiers and sailors served under the Constitution to which she owed allegiance, but they served to the credit of Kansas, and for her, as much as though they had fought

under her own enlistment to repel an invader on her own soil. Connecticut's interest in such service was indirect, and identical with that resulting from the services of the quotas of every other State. That the soldiers and sailors who filled the quotas of other States must reside in this State to secure 'state aid' does not change the situation. A State's bounty must be limited to her own soldiers and sailors. Service to the credit of other States is not service for her." In *Lyman* v. *Adorno,* 133 Conn. 511, 526, 52 A. 2d 702, we quoted this passage from the *Beach* case. That was, however, for the purpose of pointing out that the provisions of the act granting a bounty to veterans then before us did not go beyond the limitations there set. We had no occasion to affirm or overrule the *Beach* case and carefully refrained from doing either.

The *Beach* case was decided in 1912. Since then this country has been engaged in two great conflicts, and our experiences in them have placed beyond doubt the complete interdependence of the states and the nation in time of war. The armed forces of the United States are almost wholly made up of citizens of the several states. The national guard is an integral part of the armies of the United States. See *Lyman* v. *Adorno,* supra, 519. Under the federal constitution no state can "engage in War, unless actually invaded, or in such imminent Danger as will not admit of delay." Const. U. S. Art. I § 10. In the late great war the issue at stake was not merely the continuation of such a national government as we enjoy but the existence of each state and the protection of the way of life which its citizens have enjoyed. We now see that it would be a mistake not to recognize that the success of the armed forces of the United States in these wars directly concerned and was the only means of protecting the freedom, the lives and the property of the

citizens of this state. To hold that a favorable outcome did not directly promote the welfare of our citizens is to close our eyes to the stern realities we have faced.

In the armed forces of the United States, the citizens of the various states were indiscriminately mingled; they all served one common cause; and it would not be possible to say that the citizens of this state did more to protect its interests and those of its people than did the citizens of other states. These considerations led us in the *Lyman* case to say (p. 519): "It is true that it is the function of the federal government and not of the states to carry on war, and that the men and women to whom the act applies were in the service of the United States, not of this state. But it is only by the loyal and patriotic service of the citizens of the various states that the United States can carry on a war. Such service no less protects this state and its people because it is rendered under the federal government. Loyalty and patriotism have their place in peace as well as in war; but, that aside, these men and women were serving no alien cause. To hold that, because the federal and state governments are distinct agencies, though of one people, a state may not, by a grant to its citizens, encourage in them loyalty and patriotism is to give more effect to that distinction than the realities of the situation justify." However sound we may have been in the statement quoted from the *Beach* case, at the time it was made, no reasonable person, considering the recent history of this country, can doubt that the principle there enunciated expresses too narrow a view of the services rendered to promote the welfare of this state by persons in the armed forces of the United States who became a part of them when residents of other states, or in fulfillment of quotas assigned to those states.

In the *Lyman* case we quoted (p. 517) from the pre-amble of the act then before us as follows: "Public interest and welfare will be wisely served by due and prompt recognition of an obligation of the state of Connecticut to those persons who served with credit in the armed forces during the period of world war II, in the form of money payments as provided herein; by such payments will be manifested a public will to incite patriotism, promote devotion to state and coun-try, and encourage a readiness to sacrifice life, health and treasure for the common good; and such payments will be for the direct benefit of all the people of this state, will stimulate and strengthen the support of our government and will directly promote the welfare of the people of the state in equal measure." We went on to say that it was unnecessary to argue that the purpose so stated falls fully within the field of the promotion of the public welfare of the people of this state; and we said (p. 518): "Upon that issue we can-not set up our judgment against that of the legislature unless its action is so clearly unreasonable that there is no room for disagreement. . . . The General As-sembly may well have believed that recognition and appreciation of fine service already performed are an encouragement to like services in the future and that tangible evidence of that appreciation by a grant of money gives to it greater weight. Whatever may be our own convictions in that regard, we cannot say that such a basis for the grants made in the act before us is so beyond the realm of reason that we can hold the law unconstitutional as purely a gift of public funds to the individuals who will benefit from it." In that case we also said (p. 516): "The exemption of individ-uals from the burden of taxation stands on a ground similar to that of an appropriation of public funds." In illustration of the fact that if a statute serves a

public purpose it is not rendered invalid because it confers a direct benefit on an individual or individuals, we cited various statutes in this state which do grant such exemptions.

The acts now before us contain no preamble reciting the purpose or purposes they are intended to serve. If, however, there are any reasonable grounds upon which they can be sustained under the constitution, we are bound to assume that the legislature intended to further those grounds rather than that it acted from some improper motive. *Wheeler's Appeal*, 45 Conn. 306, 319; *Connelly* v. *Deconinck*, 113 Conn. 237, 240, 155 A. 231. The legislature could reasonably find that the granting to veterans of exemptions from the property tax would promote the welfare of this state and its people as much as would such direct payments to them as was provided in the statute before us in the *Lyman* case, and we are bound to consider that this was the purpose intended to be served rather than to grant gifts in the nature of gratuities. We cannot hold that the General Assembly was not justified in believing that there was good ground for extending the grants to residents of this state although they were not such when they entered service and did not form a part of the quota of this state. Indeed, the purposes which we must assume the General Assembly intended to serve by the exemptions in question—the incitement of patriotism, the promotion of devotion to state and country, the encouragement of a readiness to sacrifice life, health and treasure for the common good—look to the future, not to the past; only if we were to regard the exemptions from taxation as rewards for past services, as in effect gratuities, would service in the quota of this state have any controlling significance; it is because it may serve to influence those who are residents now or who may become such in the future that

encouragement to patriotic service promotes the general welfare.

The United States Supreme Court has said that in determining whether taxation is imposed for a public purpose courts "must be governed mainly by the course and usage of the government, the objects for which taxes have been customarily and by long course of legislation levied, what objects or purposes have been considered necessary to the support and for the proper use of the government, whether State or municipal. Whatever lawfully pertains to this and is sanctioned by time and the acquiescence of the people may well be held to belong to the public use, and proper for the maintenance of good government, though this may not be the only criterion of rightful taxation." *Loan Association* v. *Topeka,* 20 Wall. (87 U. S.) 655, 665, 22 L. Ed. 455; see *People* v. *Westchester County National Bank,* 231 N. Y. 465, 470, 132 N. E. 241; *Wheeler's Appeal,* 45 Conn. 306, 315; *Sanger* v. *Bridgeport,* 124 Conn. 183, 190, 198 A. 746. The fact that since 1879 in certain instances, and since 1886 in broad terms, limited exemptions from the property tax have been granted to veterans resident in this state regardless of the fact that they did not enter the armed forces from this state, that these exemptions have been allowable in every town over all these years and have no doubt been put into effect in a great number of instances, and that, so far as we know, they have not been questioned, would in itself go far to sustain the statute in question. We have found no decisions in other states holding that a legislature had no power to grant such exemptions, although it is true that we know of only one case where exemptions granted on the basis of residence were sustained. *State* v. *Snyder,* 29 Wyo. 199, 215, 212 P. 771. Finally, we quote from Judge Cooley's work on taxation, using the second edition to be sure

that the words are his own and not those of later re-
visers, where, in speaking of the purposes for which
taxes may be laid, he says: "To show gratitude for
meritorious public services in the army and navy by
liberal provision for those who have performed them
is not only proper in itself, but it may reasonably be
expected to have a powerful influence in inciting others
to self-denying, faithful and courageous services in the
future, when the government, which is so ready to be
generous as well as just, shall have need of their assist-
ance." Cooley, Taxation (2d Ed.) p. 111. If taxes
may be laid for such a purpose, certainly veterans may
properly be exempted from the payment of a portion
of the taxes which are levied generally upon the people
of a state.

Section 158f of the 1941 Supplement includes in its
terms all residents of the state who meet the conditions
specified in it, whether or not they entered the armed
services of the United States by enlistment while resi-
dents here or as a part of the quota of this state, and,
so interpreted, it does not offend against the constitu-
tion. Little need be added as to the other statutes
questioned in the reservation. The considerations we
have stated are sufficient to sustain the validity of the
exemptions granted in § 1163 of the General Statutes
to residents of this state who have served in the armed
forces and are receiving pensions or compensation from
the federal government, and to widows, fathers and
mothers, resident in this state, of persons who so
served. These considerations would also sustain the
validity of § 258g, Sup. 1943, which grants exemptions
to service men resident in this state who have a disabil-
ity rating by the veterans administration, and § 260g,
which grants an exemption to a resident of this state
who is serving in the armed forces, unless it be because
of the inclusion of persons who were enrolled in the

merchant marine of the United States, a provision which we shall discuss later. The grant of a limited exemption in § 370c, Cum. Sup. 1935, to "any resident or nonresident of this state" who is in the armed forces of the United States and has been detailed to instruct the Connecticut national guard stands on even stronger ground, because the services of such persons are in direct furtherance of one of the recognized agencies of the state, which, as we pointed out in *Lyman* v. *Adorno,* 133 Conn. 511, 520, 52 A. 2d 702, is an integral part of the first-line defenses of this nation. Section 371c, Cum. Sup. 1935, in granting a limited exemption to those who were in the military or naval service of a government allied or associated with the United States requires not only that the recipient of the benefit shall be a "citizen of the United States" but, by its limitation to those who have filed their certificates of honorable discharge in the office of the town clerk in the towns where they reside, confines the exemption to residents of this state, and we cannot hold that the General Assembly, in forwarding its general plan of the promotion of public welfare by rewards to those who fought together in a common cause, could not reasonably include these persons.

Nor can we hold that the legislature lacked power to extend the exemption (§ 276h, Sup. 1945) to include those who served ninety days in the merchant marine of the United States. By the words used in that statute, "enrolled in the United States maritime service ... during the second world war," the General Assembly must have intended persons who served under the war shipping administration during the late war in vessels engaged in transportation and not forming a part of the navy. See 57 Stat. 45, 50 U. S. C. App. § 1291; 46 Code Fed. Regs. (Cum. Sup. 1943) § 310.25 et seq. We can take judicial notice that the successful

prosecution of that war would hardly have been possible without the transportation facilities afforded by merchant vessels operating under the war shipping administration and that the persons who served in those vessels were subject to most serious danger of injury or loss of life from risks directly inherent in armed conflicts at sea and on the shore. The General Assembly could reasonably regard it as not unlikely that a similar situation may arise again should this nation become involved in another great war.

To the first question in the reservation, asking in effect whether or not the exemptions from the property tax granted by the statutes we have been considering may be made effective as regards those who were not residents of this state at the time of their enlistment or induction and did not serve as a part of the quota of this state, we answer that such exemptions are within the meaning of the statutes in question and are valid. There is no need further to answer the other questions propounded.

No costs will be taxed in this court to either party.

In this opinion the other judges concurred.